UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

**************************************)
**Stephen L. D'Angelo,**            )
**Plaintiff**                     )
                            )
**v.**                           )     **C.A. No.:**
                            )
**New Hampshire Supreme Court,**   )
**Brian Germaine, Esq.,**         )
**Defendants**                 )
                            )
**************************************

## VERIFIED COMPLAINT, REQUEST FOR A TEMPORARY INJUNCTION AND REQUEST FOR JURY TRIAL

     This is a Civil Action brought in the United States District Court for the District

of New Hampshire by the Plaintiff, Stephen D'Angelo, to restrain the enforcement of

court orders promulgated without consideration of due process or review from a New

Hampshire court of appeal and to recover damages sustained by him as a consequence of

the reckless indifference and wanton disregard for the Constitutional due process rights

guaranteed under Amendment 14 and Amendment 5 of the United States Constitution

that states  no property can be taken without due process. The Defendants deprived the

Plaintiff of substantive due process rights in violation of the New Hampshire

Constitution, United States Constitution and 42 U.S.C. § 1983 and further failed,

neglected and or refused to permit the plaintiff a hearing to participate by giving evidence

that would contradict the report issued by a Commissioner appointed by the court, that

contained misinformation and conjecture that the court relied on in making a finding.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff was not given an opportunity at a hearing held on May 11, 2012 to present his evidence that challenged the findings contained within the report. The court with its peculiar rules provides no real mechanism to have an evidentiary hearing and no process by which a lower family court judge is reviewed for error or abuse of discretion. The New Hampshire Family Court rules are unique and designed to limit access to review a lower court's ruling to insulate the New Hampshire Supreme Court from the types of appeals that the Court perceives as clogging the docket. An appeals court is reasonably expected to remain involved and provide oversight on judicial decisions that abuse discretion, are draconian in that they prescribe penalties not contemplated by any statute, do not follow the law, and are decided without due process.

Plaintiff request this court to stay any further proceedings in the courts of New Hampshire pending in the Plaintiff's matter including the implementation of any and all current and future orders until a full evidentiary hearing is held on the merits and or such time as this court tries the matter.

## I.  Introduction

On December 27, 2006 the New Hampshire Family Court issued an Order as well as a Protective Order which should have prevented the court in the April 2010 matter from escalating a child removal issue to a child support arrearages issue. The

December 27, 2006  order affirmed the established child support order that was in the amount of $570 per bi-week. The December 27, 2006  Protective Order made clear that the court could neither define nor interpret the meaning of what was intended when the parties agreed to exchange tax returns. See "**Exhibit A**"(Notice of Decision)

At issue is whether the December 27, 2006 Order and Protective Order collaterally estopps a party from raising the same issues of whether the Plaintiff would be required to pay twenty-five percent of income above the threshold of $85,000.00 regardless of the earnings of the other party, without defining income, and following the established child support guidelines or was it simply a mechanism by which a party would learn of any substantial change in circumstance that could warrant a review.  The December 27, 2006 Protective Order  as a matter of law collaterally estopps any party from enforcing the agreement in 2006.  Whether the December 27, 2006 Protective Order collaterally estopps a party seeking alleged acreages retroactively from the years 2007, 2008 and 2009 was never addressed. In the present case the court ignored the December 27, 2006 Protective Order, failed to hold hearings on another Motion for Protective Orders filed in June of 2010, and proceeded with the matter on a Motion for Contempt. . See "**Exhibit B**"( Motion for Protective Orders).

The Family Court Judge abused his discretion in awarding fees for contempt without a hearing without a written order in place that described the requirements for the production of documents that was the subject of the controversy.  The court never addressed the sensitive nature of disclosing attorney client confidential information which is what counsel was demanding. Counsel demanded that the complete

electronic file be turned over. Further Counsel demanded confidential employee information in violation of Massachusetts Law as the law firm is based in Massachusetts. The court awarded fees without a hearing or a determination on whether conduct was willful or just noncompliant.

The Ethical Rules that govern attorneys, Model Rules of Professional Conduct, were violated when counsel demanded and the court enforced through an order of contempt the production of unredacted comprehensive attorney client privileged documents from the plaintiff's law firm. Wayne Geher, Certified Public Accountant, misrepresented to the court, the income of the plaintiff through counsel at the September 13, 2011 hearing. Regardless of petitioner's counsel agreeing to the redaction of the firm's financial documents at the March 31, 2011 hearing the court awarded attorney fees and costs in its order without a hearing and without the reason the fees should be awarded.

The Defendant, Attorney Brian Germaine, appointed by the court as a Commissioner, violated the Model Rules of Professional Conduct by delegating the work assigned to him to an attorney that had a conflict of interest with the plaintiff and failed, neglected and or refused to disclose the conflict to the court and the parties to the case.

The Commissioner incompetently performed the assignment, failed to investigate, made false assumptions, relied on manufactured and misleading documentation provided by opposing counsel, and failed to interview the plaintiff as the court had ordered. The report was completed late and without input from the plaintiff. As a result of the incompetence of the Commissioner the report submitted to the court and

the parties contained substantial errors as audited by the Plaintiff's Certified Public Accountant invalidating the reliability of the report. In a detailed letter to the commissioner the plaintiff's CPA addressed the errors which the commissioner ignored and the court at hearing refused to address. See "**Exhibit C**" ( May 10 2012 Firm CPA challenging Commissioner's Report). The court at hearing refused to allow any testimony or the CPA findings into evidence. The court refused to allow any discussion on the matter.

That the Commissioner misrepresented to the court the following: the effort made to meet with Plaintiff and his counsel to document income; the effort made to contact counsel to participate in the evaluation, presentation and explanation of personal and business expenses and income.

Without a hearing to challenge the findings of the Commissioner the court adopted the report and ordered payment. The Plaintiff's due process rights are undermined, defeated, or otherwise violated when the family court stated in its order that the plaintiff would pay $5,000.00 per month during the pendency of an appeal as a penalty should the order be appealed.

Whether the New Hampshire Supreme Judicial Court rules that allow the court to review appeals as mandatory or discretionary violates due process in violation of the United States Constitution.

## II.     Parties

1.      Plaintiff, Stephen L. D'Angelo, is a natural person residing at 88 Crawford Road, Chester, Rockingham County, New Hampshire.

2.      Defendant, New Hampshire Supreme Court, is the Judicial Branch of State of New Hampshire that makes Rules and oversees the courts in the State of New

Hampshire with an address New Hampshire Supreme Court, One Charles Doe Drive, Concord, NH 03301

3.  Defendant, Brian Germaine, 23 Birch Street, Derry, Hew Hampshire 03038

### III. Demand for Trial by Jury

1.  The Plaintiffs demand a TRIAL BY JURY upon each and every count of this Complaint and all triable issues in this Federal Civil Action and hereby give Notice of their Claim for a Trial by Jury in United States District Court pursuant to Federal Rules of Civil Procedure 38 and as declared by the Seventh and Fifth Amendment of the United States Constitution. Plaintiffs further request interest, costs and attorney's fees pursuant to 42 U.S.C. §1983.

### IV. Jurisdiction and Venue

2.  This claim is brought in Federal Court as a result of Federal subject matter jurisdiction under 28 U.S.C. § 1331 due to direct violations of the laws of the United States by the Defendants, including, 42 U.S.C. § 1983, deprivation of rights granted by the United States Constitution, Amendment 5 and Amendment 14.

3.  The Plaintiff causes of action against the Defendants rise first from the rules promulgated by those in control of the courts in the State of New Hampshire; and second by the resultant deception and incompetence of a person acting in the capacity of a quasi-public official causing the plaintiff to suffer damages. The named Defendants are responsible, through reckless indifference, acts, or omissions while acting under the color of law. Those actions, if permitted, will cause irreparable injury to the constitutional rights of the plaintiff. The current rules of the family law court are flagrantly and patently violate the express constitutional prohibitions of Amendment 5 and Amendment 14 of the United States Constitution. The New Hampshire Court Rule 3 creates a separate and distinct manner between appeals pursued in family court and appeals in all other civil and criminal cases. The distinction in Court Rule 3 unfairly classifies those seeking an appeal in family court by categorizing them into Mandatory versus Discretionary Appeals. The Rule violates the fundamental right to fairness in procedures concerning individual claims against government deprivation of life, liberty, or property. There is an implied recognition of the fundamental nature of the due process right to a hearing on the merits and a review of the decision to make sure it is lawful.

### V. Background Facts

This matter before you was originally a custody issue that escalated into an issue of child support. The parties divorced in 2005. A $570.00 biweekly in child support was in place.

The parties share joint legal custody of a boy who is presently 13 year old. The ex-spouse re-married and desired to move to North Conway, New Hampshire and sought the court's approval to move. That matter resolved in favor of the boy who was permitted to remain in Derry, New Hampshire.

1. The original pleadings were filed in April of 2010.
2. The original pleadings contained nothing about back child support or that the then current payments were an issue.
3. A Motion for Contempt was filed in July 2010 relative to past income of the Plaintiff as leverage to remove the child to North Conway, New Hampshire from Derry, New Hampshire.
4. Discovery requests for financial information was sought for the years 2006 forward individually and for the business, a law firm, located in Massachusetts.
5. Relative to the issue of discovery Petitioner's attorney insisted that the law firm provide the electronic data, unedited and un-redacted, to her relative to the firms entire Quick Books.
6. The Massachusetts Board of Bar Overseers was consulted; the issues outlined with specific concerns in protecting client confidentiality for the thousands of clients' names that appear in that electronic data as well as employee financial information.
7. The Massachusetts Board of Bar Overseers cautioned, as well as warned, that the firm could not turn over the raw data as requested. See **Exhibit D** (Affidavit of Attorney Warchal).
8. Any data turned over would have to be in a format that would protect the confidentiality of clients and employees.
9. This issue came to a head on March 31, 2011 at a hearing.
10. A Motion for Protective Order was filed in June 2010.
11. The court never acted on that Motion for Protective Order.
12. Counsel for the Petitioner did not agree to any compromise in her demand until the day of the March 31, 2011 hearing.
13. The court, without a hearing on the merits, ordered attorneys' fees in excess of $12,000.

14. An appeal was presented under its rules and the court returned it without any action. See **Exhibit E** (Notice of Appeal).

15. At the next hearing on September 13, 2011 a Certified Public Accountant, Geher, retained by Petitioner's counsel presented to the court a report that purported to represent the plaintiff's income for the years 2006 through 2010.

16. In what can at best be described as creative accounting, the Certified Public Accountant, Geher's summarized rather than reviewed all credit card expenditures of the firm and plaintiff and arrived at an estimate of the Plaintiff's income for years 2006, 2007, 2008, 2009 in what Petitioner's counsel hoped the court would adopt.

17. Based on the CPA's analysis after reviewing about twenty percent of the credit card expenses for both the business and the plaintiff individually extrapolated an estimated number for gross income for the years 2006, 2007, 2008, 2009.

18. Certified Public Accountant, Geher's methodology cannot be supported.

19. A Daubert Motion was filed challenging the methodology used to create the analysis by the CPA but the court ignored, refused and or failed to hold a hearing and make a ruling.

20. The court, in its order of September 2011 appointed as Commissioner, Attorney Brian Germaine, to review the financials of both the business and the plaintiff and report back to the court.

21. The court also included in the order what amounts to a poison pill that if the order was appealed the court would impose a $5000 per month child support order pending the outcome of the appeal.

22. As part of the court order the Plaintiff was to pay a retainer of $10,000 to the Commissioner.

23. Upon receipt of that order Plaintiff called Attorney Germaine.

24. Attorney Germaine refused, neglected and otherwise failed to answer or return calls.

25. In a letter dated September 30, 2011, as a follow-up to a call that was unanswered placed to the Commissioner, it was made clear that the Plaintiff would fully cooperate. See **Exhibit F** (correspondence).

26. In a letter dated September 30, 2011Attorney Germaine was invited to come to plaintiff's law office in North Andover, Massachusetts.

27. In a letter dated September 30, 2011Attorney Germaine could have access to the firm's Quick Books accounting system while onsite;

28. In a letter dated September 30, 2011Attorney Germaine could meet with the firm's outside accountants to answer any questions.

29. Attorney Germaine's only response and only communication for the next six months was in the form of a legal document requesting payment in late October 2011.

30. Payment to the Commissioner Attorney Germaine was made in October, 2011.

31. Plaintiff retained outside Counsel, Attorney Debruykere, to assist in communicating with the Commissioner Attorney Germaine after the Commissioner failed, refused or neglected to respond to letters and phone calls. See **Exhibit G** (correspondence).

32. Commissioner Attorney Germaine failed, neglected, and overlooked this matter from September 2011 through March 2012 when Attorney Germaine began to work on the matter after he was made aware that the next hearing date would be May 11, 2012.

33. Commissioner's report contained numerous inaccurate conclusions and appears to have adopted many of the same inaccurate assumptions that CPA Geher made in his September 2011 report.

34. The Commissioner never called or corresponded to set up a meeting with Plaintiff's counsel.

35. The Commissioner never called or corresponded to set up a meeting with Plaintiff's CPA firm Saba, Coleman & Hunt accountants.

36. The Commissioner never called or corresponded to set up a meeting to visit the law firm to clarify any questions he developed.

37. The Commissioner never called or corresponded to set up a meeting to review his request for documents.

38. The Commissioner never called or corresponded to set up a meeting to explain the methodology he would use in creating a report.

39. The only communication by the Commissioner occurred by letters sent in April 2012 by the Commissioner requesting information that provided only a few days to respond.

40. The report produced by Commissioner Attorney Germaine was incompetent.

41. The report produced by Commissioner Attorney Germaine contained speculation for travel,

42. The report produced by Commissioner Attorney Germaine contained numerous errors about income.

43. The report produced by Commissioner Attorney Germaine presumed inaccurately the location of the firm's clients.

44. The timing of the production of the report produced by Commissioner Attorney Germaine failed to provide any opportunity to refute, challenge or edit the report as it was issued within a few days before the May 11, 2012 hearing.

45. The delay by the Commissioner in issuing the report provided little more than a few hours of review by the Plaintiff's CPA accounting firm Saba Coleman & Hunt.

46. The Plaintiff's CPA accountant determined that numerous items were inaccurate and or in error in the Commissioner's report.

47. The Plaintiff's CPA accountant determined that more than half the income Commissioner Attorney Germaine presumed was income was not income.

48. The Plaintiff's CPA accountant prepared a detailed analysis refuting the findings of Commissioner Attorney Germaine.

49. Many of the same assumptions and analysis that were in CPA Geher report were adopted by Commissioner Attorney Germaine.

50. At the May 11, 2012 court date, the Judge never permitted the Plaintiff's CPA's detailed report to be entered as evidence.

51. At the May 11, 2012 court date, despite the attempt by plaintiffs counsel to do so, the court would not hold an evidentiary hearing.

52. At the May 11, 2012 court date, despite the attempt by plaintiffs counsel to do so, the court would allow offers of proof.

53. At the May 11, 2012 court date, despite the attempt by plaintiffs counsel to do so, the court would not except the report prepared by the CPA accounting firm of Saba, Coleman & Hunt that contradicted the report prepared by Commissioner Attorney Germaine.

54. The court issued its findings May 22, 2012.

55. The court adopted the findings of the Commissioner Attorney Germaine bolstering that decision with the September 2011 CPA Geher report.

56. The court also added the caveat that if an appeal were pursued that the court would sanction the plaintiff with a $5000 penalty.

57. An appeal was pursued.

58. The New Hampshire Supreme Judicial Court has created rules that allow the court to review appeals as mandatory or discretionary.

59. This appeal falls into the discretionary category according to Rule 3.

60. The New Hampshire Supreme Judicial Court refused to review the decision of the family court even regardless that the lower court refused to have a hearing on the merits which violates the United States Constitution Fifth and Fourteenth Amendment.

61. The family court order went beyond the bonds of what is fair and equitable in the order contains a penalty for seeking an appeal. See **Exhibit H** (May 22, 2012 Oder)

62. The Plaintiff, an attorney, trusted that the family court would conduct fair and impartial hearing.

63. Commissioner Attorney Germaine's error ridden report was incompetently prepared as it contained significant mistaken conclusions as determined by a Certified Public Account.

64. When mistakes reach the realm in excess of fifty percent (50%) error rate it demonstrates the incompetent of the preparer, Commissioner attorney Germaine.

65. Rules of Ethics Rule 1.1 states a lawyer shall provide competent representation to a client.

66. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

67. Model Rule 1.10 states that while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9.

68. Rule 1.7 Conflict Of Interest: Current Clients states (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (2) there is a

significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (4) each affected client gives informed consent, confirmed in writing. Rule 5.2 Responsibilities of a Subordinate Lawyer states A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.

69. Commissioner Attorney Germaine failed to disclose that Attorney Elizabeth Richter worked on the report.

70. Commissioner Attorney Germaine failed to disclose that Attorney Elizabeth Richter did the majority of the report.

71. Commissioner Attorney Germaine failed to disclose to the court that Attorney Elizabeth Richter had an ethical conflict because of the adverse relationship her husband had with the respondent in 2010 and 2011.

72. Family court judge recitations of facts in the order were incorrect and inaccurate.

73. Commissioner attorney Germaine led the court to believe that the plaintiff had acted in a deliberate attempt to delay the Commissioner from executing his report.

74. Commissioner Attorney Germaine falsely represented to the court that he could not focus on this matter until the last forty-five days due to the fact that he could not obtain the requested information from the Plaintiff.

75. Commissioner Attorney Germaine failed and neglected to contact Respondent and his attorney until April 2012 despite numerous phone calls and letters.

76. The first communications by the Commissioner was by letters dated April 9, 2012 and April 23, 2012.

77. These letters dated April 9, 2012 and April 23, 2012 were responded to and the documentation requested provided.

78. Letters from Plaintiff's counsel, Attorney Debruyckere, as well as telephone calls support the contention that Commissioner Attorney Germaine misrepresented the facts to the court.

79. Any struggles the Commissioner had were of his own doing and not related to Plaintiff or his counsel, Attorney Debruyckere.

80. There was no evidence supplied to the court by the Commissioner that support the contention that Plaintiff understated his income.

81. Commissioner in error relied on the Geher CPA report to complete its report.

82. The court failed to follow the *Daubert* standard as required by the New Hampshire Rules of Evidence.

83. The court should have instructed the parties that it would take testimony on the methodology used and whether that was within sound accounting principals.

84. The family court erred by focusing on the reliability of the expert's conclusion rather than the reliability of the method used to reach the conclusion.

85. Family Court Judge abused his discretion in awarding fees for contempt without a hearing.

86. There was no written order in place that described the requirements for the production of documents.

87. The court should have acted on the Motion for Protected Order taking into consideration the sensitive nature of disclosing attorney client confidential relationships which is what petitioner's counsel was demanding.

88. The court misapplied the law in its finding the Respondent in contempt.

89. This issue of disclosing confidential client information was never addressed by the court prior to the March 31, 2011 hearing date.

90. At the March 31, 2011 hearing the Petitioners attorney withdrew her demand at the last minute for the complete electronic QuickBooks accounting record.

91. The withdrawal of the demand for the complete electronic QuickBooks accounting record should also have been a withdrawal of the contempt.

92. Thousands of pages were reviewed and redacted to provide the records of the law firm's business financials.

93. There was no willful attempt by the plaintiff to withhold these documents but rather an ethical duty to protect clients' information who were not parties to this litigation.

94. The court decided, without a hearing, to award an outrageous amount of attorney fees and costs including more than two thousand dollars related to their CPA Geher for attending that hearing.

95. To constitute contempt, a party's conduct must be willful as noncompliance alone will not support a judgment of contempt.

96. A finding of contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court.

97. The facts do not support a finding that the respondent's conduct was willful.

98. The court prevented the filing of an appeal by returning the Notice of Appeal to the Plaintiff without any reason. See **Exhibit I** (Notice of Appeal of Nay 22, 2012 Order)

99. The family court should be prevented from hearing any portion of this matter relative to Respondent's income for 2006 as the issue of income was decided in 2006 relative to the Order and Protective Order of December 27, 2006.

100. The family court set the biweekly payment at $570.00 in 2005.

101. The court in 2006 never determined whether the meaning of 25% should apply to the plaintiff alone or whether the court should also look at petitioner's income to determine what was a fair determination of a weekly child support payment according to the child support guidelines.

102. The Order and Protective Order of December 27, 2006 should apply going forward to the years 2007, 2008 and 2009 unless there was a substantial material change in circumstance.

103. The court is collaterally estopped from retroactively changing child support payment prior to April 2010.

## VI. Counts of the Complaint

### COUNT I
### *(Injunctive Relief for Plaintiff)*

104. Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred-three (103) above, as fully as if expressly rewritten herein.

105. The implementation of an order from the Derry Family Court would violate the Fourteenth (14th) and Fifth (5th) Amendment Due Process Rights of the United States

Constitution.

106.   The New Hampshire Rule 3 that defines when an appeal from a family court matter
       of the New Hampshire Supreme Court is permitted (*See ORDER ON ADOPTION OF
       AMENDEMNTS TO COURTB RULES (Oct. 9, 2007),
       http://www.courts.state.nh.us/supreme/orders/ord20071009.pdf)* violates the
       principals of law in that it permit a lower court judge to abuse discretion, make
       arbitrary findings, and make incorrect rulings of law without recourse.

107.   The present system permits the taking of property without due process.

108.   The New Hampshire Supreme Court cannot have a rule that obviates the rights
       guaranteed by the United States Constitution.

109.   The court is permitting the seizure of real property without a hearing in a state court
       proceeding which is a deprivation of property without due process, violating the Fifth
       Amendment as well as the Fourteenth Amendment of the United States Constitution.

110.   At present the Plaintiff is being threatened with the forfeiture of a property interest in
       a boat as well as other assets.

111.   The order will cause irreparable harm to the plaintiff because of the ancillary impacts
       on credit both personal and commercially.

112.   Wherefore this court should issue a preliminary injunction to enjoin the Derry District
       Court from implementing, enforcing or otherwise taking any action until the a
       determination can be made whether the order being enforced is utterly and
       irredeemably unconstitutional.

## COUNT II
### *(D'Angelo v. New Hampshire Supreme Court)*
### *- In Violation of Substantive Due Process Rights*

113.   Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one
       hundred twelve (112) above, as fully as if expressly rewritten herein.

114.   Rule 3 promulgated by the New Hampshire Supreme Court violate the Fourteenth
       (14th) and Fifth (5th) Amendments Due Process Rights of the United States
       Constitution.

115.   The Rules of the  New Hampshire Supreme Court that govern and only apply to the
       Family Courts of New Hampshire allows the family court to have a hearing without

evidence. Issue orders that do not follow precedent and provides no remedy to a party to appeal a decision as most family court orders are only reviewed by the New Hampshire Supreme Court on a discretionary basis.

116.    The New Hampshire Supreme Court reviews matters that are put on a form that limits an explanation of the appeal and designed primarily to block appeals generated in the family court "especially when many of the appeals deal with fact-based questions, rather than issues of law." (Dan Wise, *Justice Dalianis Discusses Family Law appellate Caseload,* BarNews (June 9, 2006). See **Exhibit J**

117.    Wherefore this court should issue a preliminary injunction to enjoin the Derry District Court from implementing, enforcing or otherwise taking any action until the a determination can be made whether the order being enforced is utterly and irredeemably unconstitutional.

### COUNT III
### *(D'Angelo v. New Hampshire Supreme Court)*
### *Reckless Indifference to the United States Constitution*

118.    Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred seventeen (117) above, as fully as if expressly rewritten herein.

119.    Defendant  recklessly and wantonly allow its family courts to act without review of its decisions sets a dangerous precedent in permitting decisions to violate Constitutional Rights.

120.    Defendant recklessly and wantonly allowed its family courts to make decisions without hearing, following law, and decide matters without review or the right of appeal.

121.    Defendant knew or should have known that permitting courts to make decisions without oversight would cause the Plaintiffs to suffer serious harm.

122.    Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiffs for damages suffered as a result of the Defendants' reckless indifference and wanton disregard for the plaintiff's Constitutional Rights and all other damages recoverable together with interest, costs, attorney's fees, and such other relief as this Honorable Court may

deem appropriate.

## COUNT IV
### *(D'Angelo v. Germaine)*
### *In Violation of 42 U.S.C. §1983-Substantive Due Process Rights*

123.   Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred eleven (122) above, as fully as if expressly rewritten herein.

124.   Defendant Germaine was appointed a Commissioner by the Derry family court in May 2011.

125.   Defendant Germaine failed to perform a reasonable investigation of the underlying plaintiff's personal income;

126.   That Defendant Germaine abused a position of authority that gave him real or apparent power to affect Plaintiff's interests;

127.   Defendant Germaine prepared, without any input from the plaintiff, a commissioner's report that was an inaccurate presentation of the plaintiff's income.

128.   Under the color of law Defendant Germaine misrepresented material facts to the court in his commissioner's report;

129.   Under the color of law Defendant Germaine intended to induce reliance in the commissioner's report by the court;

130.   Under the color of law Defendant Germaine willfully and wantonly and in a tortious nature concealed the erroneous nature of the commissioner's report;

131.   Defendant Germaine's failed to disclose material facts where the nature of the relationship between the parties gives rise to an affirmative duty to do so; and

132.   Under the color of law the actions of Defendant Germaine resulting in damage to the plaintiff in violation of the plaintiff's due process rights.

133.    Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiffs for damages suffered as a result of the Defendants' reckless indifference and wanton disregard for the plaintiff's Constitutional Rights and all other damages recoverable together with interest, costs, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

**COUNT V**
*(D'Angelo v. Germaine)*
**Breach of Fiduciary Duty**

134.    Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one
        hundred thirty-three (133) above, as fully as if expressly rewritten herein.

135.    Defendant Germaine owed plaintiff fiduciary obligations. By reason of their fiduciary
        relationship Defendant Germaine owed  the highest obligation of good faith, fair
        dealing, and due care.

136.    Defendant Germaine failed to perform a reasonable investigation of the underlying
        plaintiff's personal income;

137.    Defendant Germaine violated and breached his fiduciary duties of care, fair dealing,
        and good faith when he failed, neglected, and/or refused to communicate with the
        plaintiff on the preparation of the Commissioner's Report.

138.    Defendant Germaine violated and breached his fiduciary duties of care, fair dealing,
        and good faith when he failed, neglected, and/or refused to amend the
        Commissioner's Report when he had actual and constructive knowledge that the
        Commissioner's Report was seriously flawed.

139.    Defendant Germaine violated and breached his fiduciary duties of care, fair dealing,
        and good faith when he failed, neglected, and/or refused to inform the court of the
        erroneous nature of the Commissioner's Report that deceived and mislead the court.

140.    Defendant Germaine violated and breached his fiduciary duties of care, fair dealing,
        and good faith when he failed, neglected, and/or refused to correct the
        Commissioner's Report causing the Plaintiff to suffer damages.

141.    Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an
        amount that will fairly and adequately compensate Plaintiffs for damages suffered as
        a result of the Defendants' reckless indifference and wanton disregard for the
        plaintiff's Constitutional Rights and all other damages recoverable together with
        interest, costs, attorney's fees, and such other relief as this Honorable Court may
        deem appropriate.

## COUNT VI
### *(D'Angelo v. Germaine)*
### Breach of Contract

142.    Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred forty-one (141) above, as fully as if expressly rewritten herein.

143.    Defendant Germaine was appointed by the family court and paid by the plaintiff with the promise to perform all legal work in a highly competent manner.

144.    Defendant Germaine promised to complete the commissioner's report in timely manner.

145.    Defendant Germaine promised to complete the commissioner's report without any deference to either party.

146.    Defendant Germaine failed to perform a reasonable investigation of the underlying plaintiff's personal income;

147.    Defendant Germaine failed to perform as promised which constitutes a breach of contract.

148.    Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiffs for damages suffered as a result of the Defendants' reckless indifference and wanton disregard for the plaintiff's Constitutional Rights and all other damages recoverable together with interest, costs, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

## COUNT VII
### *(D'Angelo v. Germaine)*
### Negligentce

149.    Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred forty-eight (148) above, as fully as if expressly rewritten herein.

150.    The Defendant Germaine, as commissioner appointed by the court because as an family law attorney he possesses specialized knowledge, owed the parties and the court an obligation to act as would a reasonably prudent person under similar circumstances;

151.    Defendant Germaine failed to perform a reasonable investigation of the underlying plaintiff's personal income;

152.    Defendant Germaine's failure to disclose known errors may be evidence of actual concealment, which may in turn support a fraud;

153.    Defendant Germaine breached his legal duty when the defendant's conduct fell below the relevant standard of care when he failed, neglected and or refused to utilize whatever specialized knowledge that the attorney happened to possess;

154.    Defendant Germaine negligence caused actual and appreciable harm to the Plaintiff that would not have occurred but for the negligent preparation of the commissioner's report;

155.    Defendant Germaine's negligence caused the plaintiff to suffer legal cognizable damages;

156.    Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiffs for damages suffered as a result of the Defendants' reckless indifference and wanton disregard for the plaintiff's Constitutional Rights and all other damages recoverable together with interest, costs, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

## COUNT VIII
### *(D'Angelo v. Germaine)*
### *Misrepresentation*

157.    Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred fifty-six (156) above, as fully as if expressly rewritten herein.

158.    Plaintiff suffered pecuniary loss as a result of defendant Germaine's misrepresentations;

159.    Defendant Germaine's failure to disclose known errors is evidence of actual concealment, which in turn support a fraud;

160.    Defendant Germaine affirmatively misrepresented material facts in the commissioner's report to the court;

161.    Defendant Germaine commissioner's report contained numerous errors that he was made aware of but chose not to rehabilitate the report;

162. Defendant Germaine had knowledge of the errors in the commissioner's report but with reckless disregard for the truth chose to submit the report to the court;

163. The court in reliance upon the misrepresentation by the defendant Germaine commissioner's report caused the plaintiff to suffer damages;

164. Plaintiff is entitled to recover the consideration paid, together with any other compensation necessary to restore the plaintiff to the status quo *ante;*

165. Wherefore, the Plaintiffs pray that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiffs for damages suffered as a result of the Defendants' reckless indifference and wanton disregard for the plaintiff's Constitutional Rights and all other damages recoverable together with interest, costs, attorney's fees, and such other relief as this Honorable Court may deem appropriate.

**COUNT IX**
***(D'Angelo v. Germaine)***
***Reckless Infliction of Emotional Distress***

166. Plaintiffs repeat and re-allege each statement in paragraphs one (1) through one hundred sixty-five (165) above, as fully as if expressly rewritten herein;

165. The fraudulent misrepresentation is the proximate cause of personal injury to the plaintiff;

166. Defendant had knowledge that the misrepresentation was false;

167. Defendant intended to induce reliance;

168. The court actually relied upon the alleged misrepresentation;

169. Representations cast in the form of opinion may nevertheless constitute actual misrepresentation if they imply the existence of facts supporting the opinion;

170. The alleged misrepresentation is a misrepresentation of *fact;*

171. The misrepresentation is the proximate cause of personal injury to the plaintiff;

172. That Defendant Germaine was negligent in preparing the commissioner's report;

173. Defendant Germaine knew that emotional distress would probably result from his conduct;

174. Defendant Germaine gave little or no thought to the probable effects of his conduct;

175. That Plaintiff suffered serious emotional distress;

176. That Defendant Germaine's negligence was a substantial factor in Plaintiff's serious emotional distress; and

177. Plaintiff is entitled to the full range of damages otherwise available in personal injury actions including punitive damages.

Wherefore plaintiff prays this Court issue equitable relief as follows:

I. Issue a preliminary injunction to enjoin the Derry District Court from implementing, enforcing or otherwise taking any action until the a determination can be made whether the order being enforced is utterly and irredeemably unconstitutional.

II. Issue declaratory relief as this Court deems appropriate just.

III. Issue other relief as this Court deems appropriate and just.

IV. Award plaintiff his costs of litigation.

## VII. Verification

I Stephen D'Angelo, hereby depose and state individually as follows:

1. I am resident of the State of New Hampshire and am employed with the law firm of D'Angelo & Hashem LLC, a Massachusetts Limited liability company.

2. I reside a 88 Crawford Road, Chester, New Hampshire

3. I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set forth therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief which I believe to be true.

Signed under the penalties of perjury on this ___25_____ day of October, 2012.

_____/s/ Stephen L. D'Angelo___
Stephen L. D'Angelo

Date: October 25, 2012

Respectfully submitted,
Plaintiff as named above,


_/s/ Stephen L. D'Angelo___
Stephen L. D'Angelo
401 Andover Street, Suite 202
North Andover, MA 01845
978-687-8100
978-687-8111 fax
sld@lawyeradvocates.com