# EXHIBIT H

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - Family Division - Derry  
10 Courthouse Lane  
Derry NH 03038

Telephone: (603) 421-0077  
TTY/TDD Relay: (800) 735-2964  
http://www.courts.state.nh.us

## NOTICE OF DECISION

MICHAEL F. MIMNO, ESQ  
MIMNO LAW OFFICE  
305 NORTH MAIN STREET  
ANDOVER MA 01810

Case Name: In the Matter of Janice D'Angelo and Stephen D'Angelo  
Case Number: 622-2004-DM-00276

Enclosed please find a copy of the Court's Order dated May 14, 2012 relative to:

**Order on Pending Motions.**

May 22, 2012

Robin E Pinelle  
Clerk of Court

(620)  
C: Heather E. Krans, ESQ; Brian G. Germaine, ESQ; James P. Roche, ESQ

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

Rockingham County                                              10th Circuit - Family Division - Derry

In the Matter of: Janice D'Angelo, Petitioner and Stephen D'Angelo, Respondent
Case No. 622-2004-DM-00276

### ORDER ON PENDING MOTIONS

The parties to the present action were scheduled to appear before this Court on May 11, 2012 relative to a Hearing on all Pending Motions scheduled by this Court after the parties' September 13, 2011 Hearing.

At the May 11, 2012 Hearing, the Petitioner, Janice, appeared with Attorney Heather E. Krans, Esq. and the Respondent, Stephen, appeared with Attorney Michael F. Mimno. The Court's Commissioner, Attorney Brian G. Germaine, Esq., also appeared.

The Court notes for the record that this current Hearing was scheduled by this Court after the parties' September 19, 2011 Order on Final Hearing (#206) at which time this Court appointed Attorney Germaine as a Commissioner empowering Attorney Germaine to review the Respondent's law firm's financial records with the hope that the Respondent would begin communicating and cooperating with the Petitioner/Commissioner relative to the establishment of his taxable income for tax years 2006 through the present.

Specifically, this Court, in its September 19, 2011 Order on Final Hearing (#206), expressed its concern "that the Respondent has a well-documented history of thwarting the discovery process and of selectively excluding relevant financial information to the detriment of the Petitioner..." Based upon the aforementioned this Court was concerned "with the Respondent's credibility due to the fact that the Respondent, when pressed relative to the type of items/services charged to his business account and the number of monthly charges, answered that he could not say for certain that he charged any serious amount of money on his business credit card for personal expenses and then acknowledging that his law firm's bookkeeper cautioned him and his partner that charging personal expenses to business credit cards could be viewed by the IRS as an inappropriate activity and hence included in their gross income."

This Court also found the Petitioner's concerns that the Respondent's representations (as to his financial expenditures) not to be credible based upon Respondent's comments at the parties last hearing to include "that he (Respondent) does not know how we (the firm) apply the boat charges, not sure how we dealt with personal credit card charges for all the charges, and I don't know what my boat, house, investments are worth, as well as I cannot say for certain that I have used my business card for a serious amounts of money."

The Court, based upon the evasive nature of the Respondent's answers, the documentation provided by the Petitioner documenting the fact that Respondent was utilizing his law firm's accounts to pay his personal expenses (in an attempt to thwart his obligation to pay child support by reducing his taxable income), entered an finding "by clear and convincing evidence that the Respondent has understated his income, has engaged in a pattern of behavior designed to reduce his income below the aforementioned $85,000.00 mark." (E.g. the Respondent is responsible for paying 25% of his gross income to the Petitioner for income earned above $85,000.00).

The Court, in entering the aforementioned finding, expressed its concern that the "Respondent would represent that his gross income ranges from $29,590.00 to a high of $93,387.00 while being able to travel extensively, own two Porsche automobiles, purchase a 40ft yacht for $190,000.00, own several automobiles to include a Lexus, and maintain a lifestyle that would indicate by his travel, entertainment, and expenditures that he has disposable monies in excess of those stated on his Financial Affidavit."

At the time the Court appointed a Commissioner, the Court, in its September 19, 2011 Order, made the following statement:

"The Court makes note of the fact that in appointing the Commissioner (Attorney Brian Germaine) the Court is doing so in an attempt to provide the Respondent with an opportunity to submit to the Commissioner a detailed outline of what the Respondent believes his gross income from 2006 to the present entails, as well as the appropriate supporting documentation for his credit card statements and other personal expenses charged to his law firm. The Court in appointing the Commissioner is doing so as an accommodation to the Respondent in that the Respondent has stated on a number of occasions during the parties' Final Hearing that the Petitioner's expert (CPA Forensic Examiner, Mr. Wayne Geagr) was generalizing or basing his findings on assumptions or supposition. The Petitioner, in response, expressed her concern that the Respondent failed to file the appropriate documents/receipts that would allow the forensic examiner (Mr. Geagr) to review each credit card statement and/or financial document line by line. ...the Court, in appointing a Commissioner, did so in the hope that the Respondent would communicate and cooperate with the Petitioner/Commissioner relative to determining the Respondent's actual gross income as defined by RSA 458-C for fiscal years 2006 to the present and cautioned the Respondent that 'he will be accountable for not only the fees associated with the Commissioner's performance of the Commissioner's review of the Respondent's financial documentation, but also if it is found that the Respondent has directly/indirectly caused the Petitioner's counsel to incur additional fees, may also be responsible for the Petitioner's fees.'"

After the Court's September 19, 2011 Order (#206) was disseminated the Court received the Petitioner's Motion for Reconsideration Regarding Testimony of Daniel MCCoy (#207), which was granted by this Court on October 23, 2011, followed by the Respondent's Opposition to Petitioner's Motion for Reconsideration (#208) and the Respondent's Motion to Correct the Record (#209), which was denied as it was untimely filed on October 13, 2011, then the Petitioner's Objection to Motion to Correct Record (#210), the Commissioner's Notice of Confidentiality (#212) on November 9, 2011, followed by the Petitioner's Verified Motion for Show Cause Hearing (#213), Petitioner's Motion for

Entry of Judgment *Pro Confesso* (#214), Respondent's Opposition to Petitioner's Motion for a Show Cause Hearing (#215), Respondent's Opposition to Petitioner's Motion for Entry of Judgment *Pro Confesso* (#216) and Petitioner's Motion to Supplement "Motion for Reconsideration Regarding Testimony of Daniel MCCoy (#218).

At the parties May 11, 2012 Hearing the Court heard extensive testimony from Petitioner, Respondent's counsel as well as the Commissioner and after conducting an extensive review of the parties' case file is entering the following Order:

Petitioner's Verified Motion for Show Cause Hearing (#213)

The Petitioner, in her Verified Motion represents that this Court found the Respondent, Stephen D'Angelo, in contempt relative to two motions filed by the Petitioner, Janice D'Angelo, and on April 19, 2011 awarded Janice D'Angelo her fees and costs with regard to each motion. The Court, at that time, directed the Petitioner to file an Affidavit of Attorneys' Fees and Costs for Court approval, which this Court, in its September 19, 2011 Order on Final Hearing (#206) approved the Petitioner's Affidavit for Attorneys' Fees and Supplemental Affidavit for Attorneys' Fees and Costs in the amount of $ 11,167.46 (Petitioner's Affidavit of Attorneys' Fees and Costs dated April 4, 2011) and $950.00 (Petitioner's Supplemental Affidavit of Attorneys' Fees and Costs dated August 26, 2011) ordering the Respondent to pay the attorneys' fees and costs within sixty days of receipt of the Court Order on Final Hearing or a Show Cause Hearing would be scheduled.

The Court in entering the aforementioned Order specifically stated "Respondent is cautioned that if a Show Cause Hearing is scheduled and the Respondent does not prevail that the Petitioner's request for additional attorneys' fees and cost will be granted."

The Court notes that the sixty days deadline passed on or about November 22, 2011 and that it has been over 180 days since the entry of the Court's Order with the Respondent paying $2,000.00 toward the $12,409.46 debt in December of 2011. Attorney Krans testified that she attempted to communicate with the Respondent and that he failed/refused to respond to her communications relative to payment of the aforementioned debt and expressed her concern that the Respondent:

1. "managed to find $10,000.00 to pay the Commissioner in this case,
2. is representing to the Court on May 11, 2012 that he has the ability to pay for an extensive audit,
3. has the ability to take a week off to travel to Disney World,
4. has spent $1,000.00 in monthly mortgage fees on his boat as well as the collateral fees associated with owning a 'big ticket luxury item',
5. been able to enjoy a comfortable lifestyle to include owning several high end motor vehicles."

Attorney Krans, in requesting that this Court compel the Respondent to pay the aforementioned $10,409.46 in attorneys' fees, called the Court's attention to the fact that:

(a) This Court already found Mr. D'Angelo in Contempt of the Court on multiple occasions, finding that "he has a well-documented history of thwarting the discovery process and selectively excluding relevant financial information to the detriment of the Petitioner";

(b)     This Court has found by clear and convincing evidence that the Respondent has understated his income, has engaged in a patter of behavior designed to reduce his income;

(c)     This Court has found that the need to appoint a Commissioner in this case is directly related to the Respondent's failure to provide the appropriate discovery on a timely basis as well as the Respondent's well-documented history of withholding appropriate discovery and embellishing or minimizing his financial transactions in relation to the matters currently pending before the Court;

(d)     Based upon the Respondent's failure to abide by the Court's Orders the Petitioner was forced to incur additional fees and costs that "but for the Respondent's failure to comply on a timely basis would have been unnecessary." (See Court Order on Final Hearing dated September 19, 2011 at pages 3, 9, 11, 12).

The Respondent, in response to the aforementioned, represented that he did not have the ability to pay the court ordered attorneys' fees and costs and did the best he could when tendered $2,000.00 to Attorney Krans in December of 2011.

This Court, in review of the aforementioned, does not find the Respondent's representations credible. The Respondent, as proof of his inability to pay, provided the Court with his most recent Financial Affidavit in which he represents that he earns an average $3,975.93 per month and that he borrows money from his nine credit cards to pay his business/household debt and then upon the settlement of a personal injury case, pays off the balance due on the credit cards.

The Court, after an extensive review of the Respondent's financial documentation does not find the Respondent statements credible and believes the Respondent is embellishing his Financial Affidavit in an attempt to downplay his monthly income and hence his ability to pay court ordered debts.

The Court, from review of the Respondent's Financial Affidavit, questions why the Respondent would be willing to pay $1,000.00 per month in boat finance fees as well as the accompanying mooring, storage, gas, insurance expenses for a high end luxury item when he cannot pay his court ordered debts and is attempting to live off $3,975.00 per month.

This Court, based upon the financial documentation submitted by the Petitioner, is concerned that the Respondent has the ability to own high end luxury automobiles, set aside between $100.00 and $300.00 per month for vacations, entertainment and recreation, and take extensive vacations while at the same time failing to pay his court ordered debts.

It is clear to this Court that the Respondent has chosen which bills he will pay and in the process excluding his debts to the Petitioner as well as this Court.

This Court is entering a finding by clear and convincing evidence that the Respondent had the ability to make the aforementioned payment to the Petitioner and chose to pay his own bills despite being cautioned by this Court.

Based upon the aforementioned this Court is entering a finding that Mr. D'Angelo has not met his burden (preponderance of the evidence) to show cause sufficient to justify his violation of the Orders of this Court regarding the payment of attorneys' fees and costs to the Petitioner.

Accordingly, Mr. D'Angelo is found in Contempt and is required to pay $10,409.46 by July 1, 2012 to the Petitioner or upon notification of the Respondent's non-compliance a *capias* will be issued for his arrest with cash bail of $10,409.46. In regards to Attorney Krans' request for fees and costs she has incurred in collecting the aforementioned amount, this Court finds her request reasonable particularly in light of the fact that the Respondent was cautioned that he would be liable for any further attorneys' fees and costs incurred by the Petitioner based upon his non-compliant behavior.

This Court is capping Attorney Krans' attorneys' fees and costs relative to this matter at $2,000.00.

Attorney Krans shall submit to the Respondent an Affidavit of Attorneys' Fees and Costs and the Respondent shall be responsible for up to $2,000.00 of said amount. If the Respondent objects to the Affidavit submitted he may notify this Court and this Court will review the Affidavit and if this Court finds that the amount requested is reasonable, the Court will entertain Attorney Krans' request for reimbursement of the costs incurred in dealing with the Respondent's failure/refusal to pay the additional attorneys' fees.

Petitioner's Motion for Entry of Judgment *Pro Confesso* (#216)

The Petitioner, in the aforementioned Motion, expressed her concern that this Court, on three separate occasions, has entered a finding that the Respondent has either abused the discovery process, understated his income, engaged in a pattern of behavior designed to reduce his income below the $85,000.00 mark, or failed to communicate or cooperate with the Petitioner as well as abide by the Court's Orders in an effort to shirk his child support related obligations.

Attorney Krans, in her Motion for Entry of Judgment *Pro Confesso* (#216), reviewed the following factors:

(1)   This Court appointed a Commissioner to review the extensive financial documentation in this matter in order to provide the Respondent an opportunity to provide this Court with an accurate representation of his gross income from 2006 to the present and that said Order was entered into by this Court as an accommodation to the Respondent.

(2)   The Court entered a specific finding that the need to appoint a Commissioner is directly related to the Respondent's malfeasance in this case to include Respondent's failure to provide the appropriate discovery on a timely basis, as well as the Respondent's well documented history of withholding appropriate discovery, and embellishing and minimizing his financial transactions in relation to the matters currently being held before this Court.

(3)   Despite the accommodation afforded the Respondent by this Court, the Respondent has continued to engage in his established pattern of delay and contempt of the Court's Orders to include the fact that:

(a) The Respondent did not forward the court ordered retainer to the Commissioner until mid-November (an approximate 45 day delay);

(b) The Respondent waited well over two months since the <u>Court Order on Final Hearing</u> (#206) to supply any documentation to the Commissioner;

(c) The Respondent failed to pay the court ordered attorney's fees and costs to the Petitioner (that the Court ordered him to pay within 60 days or by November 22, 2011), despite having the ability to pay the Commissioner, take a vacation to Florida and afford a 40ft luxury yacht and several high-end motor vehicles;

(d) The Petitioner spent nearly two years and tens of thousands of dollars on attorneys and expert fees in attempt to secure a final determination of the Respondent's income for purposes of determining child support;

(e) The Commissioner testified at length as to the problems he has had gaining the Respondent's cooperation to include the Respondent's:

   (i) failing to provide requested documentation despite the Commissioner sending letters dated April 9, 2012 and April 23, 2012;

   (ii) failing/refusing to provide Citizen's Bank as well as the requested tax documentation;

   (iii) failing to explain the unavailability of requested financial documentation to the Commissioner;

   (iv) failing to provide receipts or paperwork documenting that certain items (boat, motor vehicles) were used to entertain clients/business purposes rather than for personal use;

   (v) failing to identify specifically which bills paid from the business credit cards were personal expenses;

   (vi) failing/refusing to provide requested detail (splits) or otherwise to allow identification of personal expenses attributed to the Respondent;

   (vii) structuring the Respondent's personal checking account at Sovereign Bank so that overdrafts are converted into a loan without providing the appropriate documentation to the Commissioner;

(4) The Petitioner, based upon the aforementioned, is requesting that the Court default the Respondent for material non-compliance with its Orders, see <u>Douglas v. Douglas</u>, 142 N.H. 419, 426 (1999), reminding the Court that the Respondent has already been found in Contempt by this Court on multiple occasions and the Respondent's actions by failing to pay his attorneys' fees are in direct

contravention of this Courts prior orders and that the Respondent is again demonstrating material non-compliance with the Orders of this Court.

Further the Respondent's actions in bootstrapping the appointment of the Commissioner (an accommodation granted to him by this Court) into a further delay of the resolution of this case is not only contemptuous, but his continued non-compliance and contempt have prejudiced the Petitioner, who is still without over $10,000.00 in court ordered fees, without any back child support, without any increased child support going forward, and without any resolution to her case.

The Respondent, in response to the aforementioned, represented to this Court that he has attempted to come into compliance with the payment of the court ordered attorneys' fees and has paid $2,000.00 toward the amount due and owing. That everything in the Petitioner's Motion for Entry of Judgment *Pro Confesso* (#216) is predicated on the presumption that her expert report (Mr. Wayne Geagr) has merit and a factual basis and that the Commissioner (Attorney Brian Germaine) will enter a finding rejecting Mr. Geagr's report as inaccurate, false, and/or misleading resulting in the Petitioner's counsel being sanctioned, charged costs, attorneys' fees, the costs of the Commissioner as well as being reported to the New Hampshire Bar Association for discipline. (This Court notes for the record that Petitioner's attorneys conduct during the pendency of this matter has been appropriate and within the guidelines espoused by the New Hampshire Bar Association).

The Respondent also represented to this Court that he has done the best he can to work with the Commissioner and attempted to contact the Commissioner in December to include, (upon the receipt of the Commissioner's Report), providing the Commissioner with an initial response as well as an update from the Respondent's CPA.

The Commissioner and Petitioner, in response to the aforementioned, expressed their concern that the Respondent's representations lacked credibility and that the Respondent was attempting to divert the Court's attention from his non-compliant behavior by blaming the Commissioner and by inferring that the Commissioner failed to diligently undertake the assignment afforded to him by this Court.

Attorney Germaine, in response, went into great detail as to the attempts he made to contact the Respondent, to obtain the appropriate requested documentation from the Respondent and the "Respondent's failure to abide by the Court's clear and unambiguous Order".

Attorney Germaine represented to this Court that he could not focus on this matter until the last forty-five days due to the fact that he could not obtain the requested information from the Respondent, that a majority of the information he received actually came from Petitioner's counsel and that the information he received from the Respondent was incomplete, lacked substance, was submitted at the last minute and required extensive review which was difficult due to the lack of corroborating documentation.

The Commissioner, in an attempt to accommodate the Respondent, in his report was willing to take the Respondent's representations at face value relative to undocumented expenses which the Commissioner included as a business expense rather than a personal expense.

Furthermore, the Commissioner after reviewing Respondent's response to the Commissioners concerns reiterated the fact that the Respondent failed to follow the Court's clear and unambiguous Order, failed to forward the requested documentation to his office and despite numerous inquiries from his (the Commissioner's) office relative to the "very limited information, the abundance of generalization used by the Respondent's CPA which were unsupported by subjective information" was met with silence by the Respondent until May 1, 2012 when the "Respondent provided the Commissioner with a red rope file containing approximately four inches of calendars".

The Commissioner represented to the Court that it was a struggle to obtain the Respondent's compliance and in his Report of the Commissioner, expressed his concern that:

(a)     The Respondent, in response to the April 9, 2012 and April 23, 2012 letters, would represent that he (Respondent) is in the process of gathering documentation, preparing response to clarify the issues presented herein, but enclosed none of the requested additional documents.

(b)     The Respondent failed/refused to supply the requested banking (Citizen's Bank) tax documentation.

(c)     The Respondent failed to submit a detailed outline of what the Respondent believes his gross income from 2006 to the present entails as he was expressly invited to by this Court.

(d)     The law firm of D'Angelo and Hashem represents that they, in their web page/advertisement of their firm's expertise, included "business litigation" and as such the Respondent is presumed to be conversant with the standard and proper business practices including the appropriate designation of business expenses and the retention of sufficient documentation thereof and despite that assumption the Respondent was hard pressed to provide the Commissioner with the appropriate supporting documentation relative to the Respondent's utilization of the firm credit cards to pay his personal expenses.

(e)     The Respondent, when pressed to provide documentation relative to his (Respondent's) use of personal property for business expenses failed to provide the documentation despite assurances that the receipts were available. The Petitioner, upon being made aware of this representation, expressed her concern that the Respondent, in his previous interrogatories represented that he did not have any of the aforementioned receipts.

(f)     The fact that the Commissioner, after his review of the limited documentation provided by the Respondent as well as the financial documentation submitted by the Petitioner, represented that "he (Commissioner) believes that all personal expenses charged by the Respondent on his business credit cards were paid by the firm and that the Respondent's failure to provide enough detail/receipts made the Commissioner's job regarding the determination of personal/business expenses extremely difficult, that the general ledger classifications of many of the expenditures were suspect, that the Respondent's payment of household expenses through his business were common place, that there were payment classifications on the general ledger that defy credulity.

(g) The Respondent's cash advances and balance transfers drawn against four of the business credit cards in the Respondent's name could not be matched up to deposits into the law firm's accounts.

(h) The Commissioner found that it was "highly likely that the use of the firm credit cards in 2006 included a substantial percentage of personal expenses incurred by the Respondent and as such the Respondent's gross income for 2006 was understated.

(i) The Respondent's gross income from 2010 is probably understated.

(j) The financial records of the D'Angelo and Hashem Law Firm provided to the Commissioner were incomplete despite numerous requests.

(k) That given the absence of receipts and other documentation of expenses charged to the business credit cards and reflected on the firm ledger, methodologies in the Nathan Wechsler Report were reasonable, efficient, and effective.

(l) The Respondent's stated income in 2007, 2008, and 2009 was not accurate.

(m) The Commissioner expressed his frustration with the Respondent's failure to communicate and cooperate which presented a serious impediment to the Commissioner being able to finish his report.

The Commissioner made a point of relaying to the Court that in determining the Respondent's gross income for fiscal years 2006 to the present that he provided the Respondent with a "the benefit of the doubt" relative to representations by the Respondent that the Respondent had receipts to back up his claim to business related expenditures and that the only way of truly finding out what the Respondent's actual income is, is to do a full firm audit which would be cost prohibitive and very time consuming.

The Petitioner, in response to the aforementioned, reiterated her request that the Respondent be defaulted based upon his failure to communicate and cooperate with the Commissioner, with the fact that the Respondent had eight months to address this issue and hired Attorney Mimno at 6:00 p.m. the night before the parties' May 11, 2012 Hearing and attempted to introduce a report prepared by his CPA by faxing it to the Commissioner and to Attorney Krans' office at 5:36 p.m. the night before the parties' Hearing. The Petitioner expressed her dismay that the Respondent is "once again attempting to introduce paperwork/documentation that would cause this matter to be delayed again to the detriment of the Petitioner.

This Court, from review of the Commissioner's Report finds the Commissioner has complied with the Court's appointment to the best of the Commissioner's ability, is concerned with the Respondent's failure to communicate and cooperate with the Commissioner and with the fact that the Commissioner received "almost all" of the financial documentation referred to in his report from the Petitioner due to the fact that the Respondent failed to cooperate, and is adopting the statutory case law and guidelines relative to the determination of gross income as stated the Commissioner's Report.

The Court agrees with the Commissioner that "gross income" under New Hampshire Child Support Guidelines "means all income from any source, whether earned or unearned... RSA 458-C:2, IV, and that this Court may include gross income in the amount of personal expenses drawn by a child support Obligor against his closely held business. See In Re: Feddersen, 149 N.H. 194, 196 (2003); In Re: Crowe, 148 N.H. 218, 223 (2002), and that a Court makes a final decision as to what income figures should be used in the child support calculation based on the facts presented at the Hearing... and that the credibility and forthrightness of a non-custodial parent in disclosing income is a factor to be considered in accepting evidence of net income." In Re: Crowe, 148 N.H. 223 (2002).

The Court agrees with the Commissioner that when an Obligor, exercises control with a method of receipt and disbursement of these monies, the Court, in its discretion, may include in gross income funds allocated by the business to benefit the Obligor. Thayer v. Thayer, 119 N.H. 871, 873 (2006).

The Court, in reviewing the procedures utilized by the Commissioner in the computation of gross income, finds that the Commissioner's methodology to be reasonable and did not find dispositive nor credible the Respondent's representation that the Commissioner's computations "were in error".

Specifically, this Court was concerned with the Respondent's attempts to undermine the Commissioner's findings based upon the Respondent's submittal of last minute documentation in the guise of "clarifications" to include a report by his CPA at 5:36 p.m. the night before the parties' hearing. Based upon the methodology utilized by the Commissioner, the Commissioner's reliance on RSA 458-C as amended, this Court adopts the Commissioner's computation of the Respondent's income in 2006 forward as well as the Commissioner's finding that the methodology in the Nathan Wechsler Report as being reasonable, efficient, and effective. The Court notes that the Commissioner, in the summary portion of his report states that "the Commissioner has accounted for Respondent's gross income as comprehensively and logically as possible given the limitations of the financial records provided and is concerned with the steps undertaken by the Respondent to circumvent the discovery process particularly in light of the fact that this Court, as an accommodation provided the Respondent with an opportunity to utilize the services of the Commissioner to ensure this Court had an accurate picture of his income and hence child support obligations.

Based upon the Courts review of the Commissioner's Report, this Court is adopting the Commissioner's Report as submitted relative to the Respondent's gross income for 2006 forward.

In light of the Respondent's well-documented history of engaging in a pattern of behavior designed to frustrate the Petitioner as well as this Court's discovery of his income to include his most recent conduct relative to the Commissioner's attempts at ascertaining the Respondent's actual income for fiscal year 2006 through 2011 to include the Respondent's acknowledgement that he has understated his income (Respondent represented that the maximum amount due would be, in his opinion, $41,000.00). This Court, is granting the Petitioner's Motion for Entry of Judgment Pro Confesso (#216) and judgment of pro confesso is ordered against Mr. D'Angelo and his child support modification and contempt for non-payment of child support matters as follows:

1. <u>Motion for Contempt for Failure to Pay Child Support (#133)</u>

This Court, in determining the Respondent's arrears, is adopting the language contained on Page 5, Section A, <u>Determination of Arrears Regarding Motion for Contempt for Failure to Pay Child Support</u> (#333) in which Attorney Krans represents that the Respondent's child support arrears is $84,349.00 and after the application of interest at the statutory rate through May of 2012 equals $94,547.00 in past due child support.

The Court finds that the total amount due, $94,547.00, constitutes a judgment under RSA 461-A:14(VI).

2. <u>Modification of Child Support and Associated Arrearage</u>

The Court adopts Attorney Krans' language contained on Page 6, Subparagraph B (Motion for Child Support and Associate Arrearage) with an arrearage resulting from Respondent's increased monthly obligation from January 1, 2011 through May 31, 2012 in the amount of $18,400.00 ($2,386.00 per month in child support - $1,234.00 per month x 16 months).

3. <u>Total Child Support Arrearage as of May 31, 2012</u>

The Court, in determining the total child support arrearage owed to the Petitioner as of May 31, 2012, is adding $94,547.00 in past due child support and accumulated interest for the years 2006 through 2010 plus $18,400.00 in child support arrears since January 1, 2011 (effective date of the new Support Order in this case) with the two sums equaling $112,947.00 in past due child support which constitutes a judgment under RSA 458-A:14(VI).

Again, the Court, in adopting the language contained in Attorney Krans' Proposed Order, makes note of the fact that the Court does not find the Respondent's representations as to the "proposed errors in the Commissioner's Report" to be credible and to the extent that the Commissioner could have mischaracterized business as personal expenses, this Court is entering a specific finding that the Respondent's willful failure to abide by the Court's prior Orders and to communicate and cooperate with the Commissioner as well as the Respondent's pattern of behavior designed to minimize the amount of his monthly income by the embellishment and/or actual misrepresentation of his monthly income to be purposeful and as such this Court finds the numbers utilized by the Commissioner to be equitable in light of the totality of the circumstances.

4. <u>Security for Judgment</u>

The Court, from an extensive review of the Respondent's Financial Affidavit, finds that the only asset that is available to satisfy the aforementioned judgment is the yacht held by D.H. Holdings, LLC.

The Court notes for the record that the Respondent originally failed to disclose the ownership of the yacht and only through Court intervention did the Respondent provide the documentation which ultimately led to the Petitioner discovering the existence of the Respondent's 40ft yacht.

Based upon the fact that the Respondent is the sole member of this LLC, this Court is concerned with the Respondent's unfettered access to this asset and is entering a specific Order that the Respondent is restrained and enjoined from transferring, hypothecating, looting, dissipating, moving, or concealing any asset of this company including the yacht or its contents.

The Court, based upon its concern as to the Respondent's willingness to abide by this Court's Orders, is adopting Attorney Krans' request that "within three days of the Clerk's notice of this Order, the Respondent shall transfer membership of the D.H. Holdings, LLC and all its assets, both tangible and intangible, to a court appointed receiver, Attorney James Roche, whose charge will be to transfer or liquidate the LLC, including the yacht and deliver the proceeds to the Petitioner in satisfaction or partial satisfaction of the aforementioned judgment.

The Respondent shall be liable for the cost of the receiver and the associated sale and liable for any deficiency.

This Court will schedule a Review Hearing in approximately thirty days of the Clerk's notice of this Order to review the status of the payment of the judgment and if this Court finds the Respondent has in any way attempted to hinder the receivers duties that a *capias* will be issued for the Respondent's arrest and detention and cash bail being set at the full amount of the child support due and owing, $112,947.00.

5.   Commissioner's Motion for Fees

This Court, from review of the Commissioner, Attorney Germaine's, Motion for Additional Fees, is granting the Motion and requiring the Respondent to be responsible for all the Commissioner's fees in this matter.

The Commissioner shall submit a final bill to the Respondent who shall pay said bill within thirty days of receipt or upon notice this Court will issue a *capias* for the Respondent's arrest with the cash bail serving as the full amount due and owing to Attorney Germaine.

This Court, in entering the following Order, is adopting the language contained in Attorney Krans' Proposed Motion in that the appointment of the Commissioner was necessitated by the Respondent's bad faith and well-documented history of withholding appropriate discovery, embellishing and minimizing his financial transactions in relation to the matters pending before this Court and that the appointment of the Commissioner served as an accommodation to the Respondent and despite that fact the Respondent failed to communicate and cooperate with the Commissioner to the detriment of the Petitioner.

The Court also adopts the Petitioner's position that Ms. D'Angelo has already paid for a forensic accountant to determine Mr. D'Angelo's income and that the forensic examiner's (Wayne Geagr) work was validated by the Commissioner.

6.   Appeal of this Order

In the event of an appeal in this Order, Mr. D'Angelo shall pay temporary child support in the amount of $5,000.00 per month during the pendency of the appeal, will be restrained from transferring ownership of the aforementioned yacht and/or any other material asset pending Further Order of this Court.

**Review Hearing:** One hour in duration to be scheduled as the docket allows.

So Ordered.

May 15, 2012
Date

Paul S. Moore, Justice