**EXHIBIT A**

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - Family Division - Derry
10 Courthouse Lane
Derry NH  03038

Telephone: (603) 421-0077
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**BRIAN G. GERMAINE, ESQ**
**BRIAN G GERMAINE PA**
**23 BIRCH STREET**
**DERRY NH  03038**

Case Name:  **In the Matter of Janice D'Angelo and Stephen D'Angelo**
Case Number:  **622-2004-DM-00276**

Enclosed please find a copy of the Court's Order dated September 19, 2011 relative to:

**Court Order on Final Hearing**

Any party obligated to pay child support is advised that it is his/her responsibility to keep the Court (and the Division of Human Services if appropriate) advised of his/her current mailing address in writing, until such time as support payments are terminated.

September 20, 2011

Robin E Pinelle
Clerk of Court

(622138)

C:  Stephen D'Angelo; Heather E. Krans, ESQ

NHJB-2207-DF (07/01/2011)

# The State of New Hampshire
## JUDICIAL BRANCH

**COUNTY OF ROCKINGHAM**              10th **CIRCUIT-FAMILY DIVISION-DERRY**
**Case No. 622-2004-DM-00276**

### In the Matter of:

### Janice D'Angelo (now Couture), Petitioner
### and
### Stephen D'Angelo, Respondent

### ORDER ON FINAL HEARING

The parties to the present action were scheduled to appear before this Court on September 13, 2011, relative to their Final Hearing on Pending Motions.

At the September 13, 2011, the Petitioner, Janice, was represented by Attorney Heather E. Krans and the Respondent, Stephen, appeared *pro se*.

At the commencement of the September 13th hearing the parties informed the Court that the following issues required the Court's attention:

1.      The Petitioner's request for recalculation of the Respondent's child support obligation;

2.      The Petitioner's request for recalculation and, if appropriate, recoupment of past due child support from 2006 through 2010;

3.      The Petitioner's request for payment of attorney's fees and costs; and

4.      The Respondent's Motion *In Limine* (#200).

## Motion *In Limine* (#200)

The Court, as an accommodation to the Respondent addressed the relief requested in Respondent's Motion *In Limine* (#200) prior to addressing the aforementioned child support related issues.

The Respondent in his Motion *In Limine* (#200) requested that this Court preclude "the admission of testimony/reports by Petitioner's expert" representing that the Petitioner disclosure of said reports were untimely. Specifically, the respondent represented that the Petitioner submitted a written report from her expert, Mr. Wayne Geher, on July 29, 2011, which was received by the Respondent on August 1, 2011, and a revised written report from Mr. Geher on September 9, 2011.

The Respondent represents that the Petitioner failed to comply with RSA 516:29-B and as such the Petitioner's expert's report should be barred.

The Petitioner in response represents that the Petitioner's delay in producing Mr. Geher's (Petitioner's CPA) report is due solely to the Respondent's well documented history of delay in producing discovery.

The Petitioner brought to the Court's attention the fact that:

A.    The discovery process was initiated by the Petitioner in May of 2010 and the Respondent proved to be an obstructionist relative to producing relevant business related records.

B.    The Petitioner was forced to file a <u>Motion to Compel</u> (#149) in the fall of 2010, and this Court issued an Order in 2010 (#163) compelling the Respondent to provide the requested discovery.

C.    This Court was required to hold a Hearing in March of 2011 relative to the Respondent's failure to provide the requested discovery (#185).

D.    This Court has had to deal with the Respondent's failure to provide discovery on two separate occasions to include producing a copy of the firm's general ledger.

E.    Despite the Court's Order relative to production of the general ledger (and other related discovery # 185) the Respondent failed to provide the general ledger and the remaining requested discovery within 30 days as required by this Court which further pushed back the Petitioner's expert's ability to provide the Respondent with his report.

F.    The CPA's (Mr. Geher) first report was issued in late July and was revised upon being provided with new information by the Respondent.  Specifically, upon being made aware of the fact that the Respondent has used his credit cards to pay cash advances to fund contingency cases the Petitioner's expert recalculated the Respondent's child support arrears and revised his July report.

The Petitioner represented to the Court that any delay in the issuance of the Petitioner's expert's report has been due solely to the Respondent's delay in providing discovery and upon receipt of the requested discovery the Petitioner's expert's report was produced on an expedited basis and upon request revised in an attempt to accommodate the Respondent.

The Court, after an extensive review of the parties' case file to include the history behind the production of the requested discovery, denied the Respondent's <u>Motion In Limine</u> (#200) to preclude admission of testimony by the Petitioner's expert.

2

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

The Court is concerned that the Respondent has a well documented history of thwarting the discovery process and of selectively excluding relevant financial information to the detriment of the Petitioner.

The Court does not find the Respondent's request to be fair based upon the fact that the Respondent has failed to abide by a number of this Court's Orders relative to the production of discoverable information and it is clear to this Court that the Respondent's failure to provide Court ordered financial documentation within the time period allotted has a direct correlation to the date by which the Petitioner's expert was able to provide his report. Based upon the aforementioned, this Court is entering a specific finding that the Respondent has failed to come to Court with clean hands and that his failure to produce the Court ordered documentation on a timely basis, his failure to avail himself of his statutory defined rights (filing the appropriate Motion for Court intervention or a timely request to extend the Court provided deadlines) excludes the Respondent at this time from attempting to preclude the Petitioner's expert's report.

### Child Support Calculation

During the parties' Hearing the Court heard from a number of witnesses relative to the Respondent's finances to include the Petitioner, Janice Couture, Wayne Geher, CPA, Stephen D'Angelo, Esq. and Daniel McCoy.

During the Petitioner's testimony she represented that the parties' Divorce Stipulation required the parties to exchange their tax returns by May 1st of each year and the Respondent was responsible for paying the Petitioner as additional child support 25% of his income over $85,000.

The Petitioner expressed her concern that the Respondent in 2006 earned $93,387 and failed/refused to pay 25% of his income over $85,000 to her ($2,565.50) despite her attempts to gain his compliance.

The Petitioner then indicated that similar requests from 2006 on were either ignored or met with "veiled threats from the Respondent relative to the Court lowering her child support." The Petitioner expressed her concern with the Respondents claims that he earned $29,590 in 2007, $92,251 in 2008, and $58,936 in 2009, despite the fact that:

    i.     The Respondent has taken his girlfriend and the parties' minor child on extensive vacations in Mexico and the Caribbean;

    ii.     The Respondent can maintain the marital residence with no ascertainable reduction in disposable income;

    iii.     The Respondent owns two Porsche automobiles;

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

iv.     The Respondent spent $190,000+ on a yacht; and

v.      The Respondent has a post divorce history of spending lavishly on his girlfriend and the parties' minor son.

The Petitioner expressed her concern that the Respondent was "running his personal expenses through his business in an effort to keep his gross income down so he wouldn't have to pay child support."

The Petitioner as an example of why she believes the Respondent's income is in excess of $85,000 brought to the Court's attention the fact that the Respondent's income, child support payments, mortgage and monthly expenses, boat payments, state income taxes, loan payments, cost of food and transportation exceed his stated income for the aforementioned years (2006 through 2009) and as a joint owner of a law firm the Respondent and his law partner have engaged in a course of conduct designed to minimize the Respondent's income to ensure the Respondent's yearly gross income does not exceed $85,000.

The Respondent in his testimony acknowledged that he owned two Porsche automobiles, a 40-foot yacht that he purchased for $190,000, that his business leases an Infinity motor vehicle for him and that he has paid a number of personal expenses with his business credit cards and stopped once his firm's bookkeeper cautioned both he and his partner that they were improperly including personal expenses in their monthly expense accounts.  The Respondent represented that his payment of personal expenses through his business was a nonissue due to the fact that the aforementioned expenses were considered a draw and included in his gross income at the end of the year.

The Respondent in addressing the Petitioner's claims that he lives a lavish lifestyle stated that living in the marital residence, driving two Porsches, purchasing a 40-foot yacht, taking extensive vacations and passing personal expenses through his business has been overstated due to the fact that:

a.      The two Porsche motor vehicles were not brand new;

b.      Even though the purchase and sale agreement for his 40-foot yacht states he paid $190,000, he really paid $160,000;

c.      He does not use the business leased Infinity for personal business;

d.      Any personal expenses he charges to the business are for business related activities only and any other expenses are reviewed on a monthly basis by the accountant and included in his draw/guaranteed payment;

e.      The boat loan application which states that his income is $229,200 in 2008/2009 is inaccurate and was written in the application by the boat broker

4

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

unbeknownst to the Respondent;

     f.    The Respondent's girlfriend has paid for the trips to Mexico and the Caribbean; and

     g.    "The Petitioner has caused a majority of the issues that are currently before this Court" based upon the fact that "she has failed to work with him relative to procuring discovery" and finds that "a majority of the issues currently before this Court have been fabricated by Petitioner's counsel."

The Petitioner in response pointed to the Court's attention the fact that the Respondent has testified:

     (1)    In regards to his payment of his motor vehicle, boat, house payments through the business that; "I don't know what my boat, house investments are worth and I am not sure what payments I have made."

     (2)    In regards to his use of his business account to pay his personal charges on his credit card bills; "That I never used my business credit card for personal expenses," followed under cross examination "That my credit card expenses are reviewed by the bookkeeper and personal expenses are allocated as a draw" followed by "I cannot say for certain I've used my business credit card for any serious amounts of money. "

     (3)    In regards to his use of his business credit cards to pay personal expenses; that "the charges associated with the Latitude Sports Club, boat payments, motor vehicle payments, food charges" (at times exceeding 30 to 40 charges a month), are "all business related" and stated that "all the charges in question were business related regardless of whether they were charges made on Saturdays or Sundays, out of state, for restaurants, relative to the boat, charging personal items, to include clothing, to include his household Verizon and Comcast bills".

The Court based upon the aforementioned was concerned with the Respondent's credibility due to the fact that the Respondent when pressed relative to the type of items/services charged to the business account and the number of monthly charges answered could not say for certain that "he charged any serious amount of money on his business credit cards for personal expenses" and then acknowledging that his law firm's bookkeeper cautioned him and his partner that charging personal expenses to business credit cards would be viewed by the IRS as an inappropriate activity and hence included in their gross income.

The Court also heard from the Petitioner's expert, Wayne Geher, who is a certified public accountant and also a certified forensic examiner.

Mr. Geher in his testimony stressed the point that he utilized the statutory definition of income contained in RSA 458-C:2 in his review of the Respondent's financial documentation, in calculating the Respondent's child support obligation.

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

Specifically, Mr. Geher made a point of stressing that;

1. He utilized RSA 458-C:2 in determining the Respondent's gross income, and
2. That he understood that the Federal Income Taxation Statutory definition of income may not coincide with the parameters set forth by RSA 458-C:2.

Mr. Geher in his examination of the Respondent's financial records expressed his concern that the Respondent used his business credit cards to pay a significant amount of his monthly expenses and as such said payments should be included in his gross income.

Mr. Geher in his review cited as examples of inappropriate charges and withdrawals the fact that:

(a)     The Respondent withdrew $6,000 from his son's 529 Plan in 2009 without providing any documentation that the funds where used to fund his son's education or the withdrawal was allowable under the appropriate IRS regulations, agreement of the parties or current Court Order.

(b)     The Respondent's boat expenses were paid by the business despite the fact that the Respondent was the record owner of the boat and the Respondent failed to provide the appropriate receipts to demonstrate that the boat activities being charged to the law firm were business related.

(c)     The Respondent used the firm's business credit cards to pay for restaurants, food, clothing, and personal entertainment expenses without providing the appropriate documentation that the expenses were business related.  Both Mr. Geher and the Petitioner questioned how the Respondent's extensive use of the business related credit cards to pay for meals on a daily basis, as well as Respondent's use of his personal motor vehicle (on weekends and holidays) could be charged as a business expense.

(d)     The Respondent's use of the credit cards to pay household internet expenses, Comcast and Verizon bills could be chargeable against the business without proper documentation.

(e)     The Respondent failed to provide a number of credit card statements and when requested failed to provide supporting documentation to the Petitioner/CPA that would aid the CPA in his assessment of the appropriateness of a charge by the Respondent.

(f)     The Respondent used his personal credit card to charge business related expenses (contingency fee cases) without providing the appropriate documentation and as an accommodation Mr. Geher revised his initial report and "gave the Respondent the benefit of the doubt on a majority of the charges identified by the Respondent as related

6

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

to contingency fee cases despite the fact that the Respondent failed to provide the
appropriate supporting documentation."

     (g)    The Respondent's use of the firm's credit cards to pay personal vehicle
expenses, club expenses, charges incurred on the weekends, out of state and for the use
and maintenance of his 40-foot yacht and during vacations without proper
documentation was indicative of a personal expenditure.

     Mr. Geher supported the Petitioner's representation that the Respondent's fixed
expenses exceed his stated gross income and provided the Court with a summary of
what Mr. Geher felt the Respondent's actual income has been since 2006.

     Mr. Geher in his Engagement Report Revised (dated September 9, 2011),
represented that the Respondent's unpaid child support from 2006 through 2010 equals
$79,679.  Mr. Geher reviewed with the Court the items he incorporated in his unpaid
child support calculations to include the Respondent's wages, interest, dividends, tax
relief funds, Schedule B business income, Fidelity investment income, and from the law
firm the distributions, guaranteed payments, boat expenses, credit card expenses, and
auto lease related expenses.

     Mr. Geher then calculated the Petitioner's 25% entitlement to any excess earnings
over $85,000 and from the resulting number imputed the total unpaid interest and
provided the Court with a total calculated unpaid child support including interest to
date of $79,679.

     The Respondent in response to Mr. Geher's report expressed his concern that Mr.
Geher's audit of his (Respondent's) law firm was the first law firm Mr. Geher had
audited to date and as such Mr. Geher did not have a true understanding of how a law
firm operates.

     The Respondent also brought to the Court's attention the fact that his firm
operates on a cash basis and that he (the Respondent) is required to front monies on
contingency fee cases and based upon that fact Mr. Geher should have reclassified "the
money fronted by the Respondent."

     The Respondent stressed the fact that the CPA (Mr. Geher) "did not go line by
line on my American Express statements for items charged by me," and the
"assumptions he (Mr. Geher) has made are not in keeping with the IRS regulations".

     The Respondent relayed to the Court the fact that as a small firm the Respondent
has a history of using his business credit cards to pay personal expenses and that it is
simply "a pass through" and he is ultimately held responsible for any personal expenses
on a company credit card and Mr. Geher would have realized that if he had gone
through every credit card bill.

     In regards to the CPA's (Mr. Geher) concern that the Respondent failed to

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

provide the appropriate receipts or paperwork documenting that the items charged on the business credit card is indeed a business expense, the Respondent represented that "the firm's bookkeeper reviews each transaction at the end of the month and places the charge in the appropriate category and any personal expenses are included in our gross income."

Mr. Geher in response represented that he could only draw assumptions from the paperwork provided and the Respondent's failure to provide the appropriate paperwork/receipts documenting the legitimacy of a personal expense charged to the business credit cards was the Respondent's choice and that he (Mr. Geher) used IRS guidelines in determining the appropriateness of a personal expense charged on a business account and then based upon RSA 458-C:2 determined whether or not said transaction/expense would be included in the Respondent's gross income.

The Respondent's bookkeeper, Daniel McCoy, testified that he has worked as an accountant for 30 years and has been associated with the law firm since 2004 and is familiar with the law firm's operation.

Mr. McCoy testified that in 2009 the law firm made a number of changes relative to the bookkeeping practices to include taking deductions for certain business related expenses and that he reviews credit card statements to ensure that the personal expenses are allocated as a draw.

Mr. McCoy indicated that health insurance payments and boat related expenses are recorded as guaranteed payments and are included in the Respondent's income.

Mr. McCoy also indicated that the Respondent and his partner had made appropriate modifications to the way that they were using the business credit cards to pay personal debt in 2009 and since that point he (Mr. McCoy) has reviewed each monthly statement to ensure that the law firm is in compliance.

The Petitioner in response to Mr. McCoy, Mr. Geher and the Respondent's testimony represented to the Court that her request for recoupment of back child support is based upon money actually earned by the Respondent to include expenses paid on the Respondent's behalf.

The Petitioner expressed her concern that the Respondent has a history of paying personal expenses out of the firm's accounts and reminded the Court that the Respondent acknowledged that his accountant instructed him (the Respondent) to stop the practice, which the Petitioner believes the Respondent has failed to abide by.

The Petitioner stressed that the Respondent's representations are not credible to include comments such as "He (the Respondent) does not know how we applied the boat charges, not sure how we dealt with personal credit card charges for all the charges and I don't know what my boat, house, investments are worth," as well as "I cannot say for certain I've used my business credit card for any serious amounts of money."

8
In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

The Petitioner expressed her concern that the Respondent has engaged in a pattern of behavior designed to reduce his income below $85,000 and to thwart any effort by the Petitioner to collect back child support causing the Petitioner to incur substantial attorney's fees and court related costs.

The Respondent in response to the aforementioned reiterated the fact that he is not leading a lavish lifestyle, that a majority of the issues raised by the Petitioner have been either fabricated by Petitioner's counsel and/or have been misconstrued by the Petitioner. The Respondent represented to the Court that he has made the necessary changes at his law firm to reflect his bookkeeper's concerns and that his income stated on his Financial Affidavit, as well as his tax returns, is his actual income earned for that year.

The Petitioner in response to the Respondent's representations brought to the Court's attention the fact that the Respondent has "been caught a number of times to have left pertinent information out of submitted discovery to include failing to list his boat, the holding company which holds his boat, the value of certain investments, as well as withdrawals from the parties' minor son's 529 account," thereby calling into question the Respondent's credibility.

The Respondent in response represented that each of the aforementioned issues were simply oversights and that in the large scheme of things do not indicate that he has earned any more money than stated on his yearly tax return.

This Court after reviewing the aforementioned testimony, as well as the extensive documents submitted, is entering the following Order.

This Court is finding by clear and convincing evidence that the Respondent has understated his income, has engaged in a pattern of behavior designed to reduce his income below the aforementioned $85,000 mark.

This Court from review of the Respondent's financial documentation agrees with the Petitioner that the Respondent's fixed expenses per year since 2006 have exceeded his stated income.

The Court is concerned that the Respondent would represent that his gross income ranges from $29,590 in 2007 to a high of $93,387 in 2006, while being able to travel extensively, own two Porsche automobiles, purchase a 40-foot yacht for $190,000, own several automobiles, and maintain a lifestyle that would indicate by his travel, entertainment, and expenditures that he has at his disposal monies in excess of those stated on his Financial Affidavit.

## Appointment of a Commissioner

Based upon the aforementioned finding this Court is appointing Attorney Brian

9

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

Germaine as a Commissioner.  The scope of the Commissioner's appointment is as follows:

aa.    To review the documentation submitted by both parties to include all financial documentation submitted during the parties' Hearing including the D'Angelo and Hashem, LLC redacted general ledger, credit card statements, as well as any other financial documentation the Commissioner feels would aid him in determining the Respondent's actual taxable income for tax years 2006 through the present.

bb.    The Commissioner in utilization of the Respondent's aforementioned financial documentation will have the authority to require the Respondent to sign the appropriate releases to allow the Commissioner to review any of the Respondent's personal and/or business related bank, investment and retirement accounts.

cc.    The Commissioner will sign a nondisclosure agreement which will prohibit the Commissioner from discussing any of the law firm's accounts, clientele, investments, etc. with third parties with the exception of court appearances related to his role as a Commissioner with the 10th Circuit-Family Division-Derry.

dd.    The Commissioner's fees shall be paid by the Respondent.  The Court finds that the payment of the Commissioner's fees by the Respondent to be appropriate due to the fact that this Court is entering a specific finding that the need to appoint a Commissioner is directly related to the Respondent's failure to provide the appropriate discovery on a timely basis, as well as the Respondent's well documented history of withholding appropriate discovery, and embellishing or minimizing his financial transactions in relation to the matters currently pending before this Court. The Respondent shall forward to Attorney Germaine a retainer in the amount of $10,000. Attorney Germaine will provide the Respondent with a monthly accounting relative to the balance of said retainer and upon approval of this Court to replenish the retainer.

ee.    The Commissioner in determining the Respondent's gross income will use as a guideline RSA 458-C, as amended.

The Court makes note of the fact that in appointing the Commissioner the Court is doing so in an attempt to provide the Respondent with an opportunity to submit to the Commissioner a detailed outline of what the Respondent believes his gross income from 2006 to the present entails, as well as the appropriate supporting documentation for his credit card statements and other personal expenses charged to his law firm.  The Court in appointing a Commissioner is doing so as an accommodation to the Respondent in that the Respondent has stated on a number of occasions during the parties' Final Hearing that the Petitioner's expert (Mr. Geher) was generalizing or basing his findings on assumptions or supposition.  The Petitioner in response expressed her concern that the Respondent failed to file the appropriate documentation/receipts that would allow the expert (Mr. Geher) to review each credit card statement and/or financial document line by line.

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

The Court in appointing a Commissioner is providing the parties with a qualified individual who is well acquainted with the Family Court Rules, RSA 458-C, as amended and will be able to perform a detailed analysis of the credit card statements, as well as other financial transactions to determine the Respondent's actual gross income as defined by RSA 458-C.

The Respondent is cautioned that he will be held accountable for not only the fees associated with the Commissioner's performance of the Commissioner's review of the Respondent's financial documentation, but also if it is found that the Respondent has directly or indirectly caused the Petitioner's counsel to incur additional fees, may also be responsible for the Petitioner's fees.

It is the Court's sincere hope that the Respondent will work with the Commissioner relative to the Commissioner's review of the Respondent's financial paperwork to include monthly credit card statements to enable the Commissioner to ascertain the exact amount of the Respondent's income pursuant to RSA 458-C:2, as amended.

If the Court's appointment of a Commissioner is appealed, the Respondent is required as part of a temporary/interim order to pay the Petitioner $5,000. monthly commencing the 5th day of the first month after the issuance date of the Courts order. The Respondent shall be credited with any monies paid during the appellate period from the total amount due and owing.  If the Respondent is, after his appeal, found to have prevailed he may deduct any monies paid from his child support obligation.

**Attorney's Fees**

This Court in its Amended Order on Pending Petitions found the Respondent in contempt relative to two Motions filed by the Petitioner; (Petitioner's Motion for Contempt, (#133), and Petitioner's Motion for Contempt for Failure to Comply with Court's November 2, 2010 Order on Motion to Compel, (#169) on April 19, 2011.

The Petitioner pursuant to RSA 458/461-A represented that the Respondent by failing to abide by the Court's Order without just cause has caused the Petitioner to incur unnecessary attorney's fees and as such this Court has the authority to award reasonable costs and attorney's fees to the prevailing party pursuant to RSA 458:51 and RSA 461-A:15.

It is the Petitioner's position that consistent with the aforementioned statutory authority that this Court order the Respondent to pay attorney's fees and costs relative to the Petitioner's Motion for Contempt (#133) and Petitioner's Motion for Contempt for Failure to Comply with Court's November 2, 2010 Order on Motion to Compel (#169).

The Petitioner on April 2, 2011, filed the appropriate Affidavit of Attorney's Fees and Costs within 30 days of the Court's Order, which was not objected to by the Respondent.

11

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276

The Petitioner notes that the Respondent did file a Motion to Reconsider the Amended Order on Pending Motions, which was objected to by the Petitioner, which caused the Petitioner to incur further attorney's fees relative to the Motions that were the subject of the Court's Order.

The Petitioner on August 26, 2011, filed a Supplemental Affidavit for Attorney's Fees for the Court's approval consisting of attorney's fees relating to Respondent's Post Affidavit Motion to Reconsider.

The Court notes that Petitioner's Affidavit for Attorney's Fees and Costs has been approved and based upon the aforementioned this Court is now approving the Petitioner's Supplemental Affidavit of Attorney's Fees and Costs.

The Court is entering a specific finding that based upon the Respondent's failure to abide by the Court's Orders the Petitioner was forced to incur additional fees and costs that "but for" the Respondent's failure to comply on a timely basis would have been unnecessary.

This Court is also concerned that the Respondent as an attorney licensed to practice in the State of Massachusetts has attempted to represent himself and during the course of his representation failed to properly file the appropriate pleadings in a timely basis, failed to follow the statutory guidelines and has at times misconstrued the appropriate statutory authority in presenting his case.

The Respondent's failure to either hire and retain local counsel and/or familiarize himself with New Hampshire Family Court Rules/statutory authority/case law has been at times a serious impediment to the Respondent's ability to appropriately represent himself.

It is this Court's hope that the Respondent will retain the services of local counsel to ensure that his Motions are properly filed, are in compliance with the Family Court Rules, are filed on a timely basis and that he uses the appropriate statutory authority/case law in addressing issues that are before this Court.

It is the Court's hope that the Respondent upon retaining services of local counsel and/or by spending the appropriate amount of time familiarizing himself with the New Hampshire Family Court Rules/statutory authority/case law will in the end reduce the time he and the Petitioner spend litigating their differences and hence attorney's fees and costs.

The Respondent is instructed to pay the outstanding Petitioner's attorney's fees and costs within 60 days of receipt of the Court Order or a Show Cause Hearing will be scheduled.

The Respondent is cautioned that if a Show Cause Hearing is scheduled and the

Respondent does not prevail that the Petitioner's request for additional attorney's fees and costs will be granted.

This Court is sincere in its hope that the parties upon receipt of the Court's Final Order will use the Court Order as the impetus to attempt to mediate their differences thereby saving the Respondent the cost associated with the retention of the Commissioner.

### **Findings of Facts and Rulings of Law**

The Court in reviewing the Petitioner's Findings of Fact and Rulings of Law is entering the following finding:

The following paragraphs are deemed admitted: 1 through 19, 21, 22, 24 through 34. The remaining paragraphs are neither admitted or denied to include paragraph 20 due to the characterization utilized in the paragraph and paragraph 23 due to the fact that the Court has appointed a Commissioner to determine the amount of child support due and owing the Petitioner.

**SO ORDERED**, this 19th day of September, 2011.

Hon. Paul S. Moore, Presiding Justice

13

In the Matter of: Janice D'Angelo (now Couture) and Stephen D'Angelo
Case No. 622-2004-DM-00276