# United States Court of Appeals
## For the First Circuit

No. 13-1059

STEPHEN L. D'ANGELO,

Plaintiff, Appellant,

v.

NEW HAMPSHIRE SUPREME COURT,
BRIAN GERMAINE, ESQ.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Torruella, Ripple,* and Thompson,
Circuit Judges.

---

Stephen L. D'Angelo, pro se.
Nancy J. Smith, Senior Assistant Attorney General, Civil Bureau, with whom Joseph A. Foster, Attorney General, was on brief for appellee New Hampshire Supreme Court.
William C. Saturley, with whom Nathan R. Fennessy and Preti, Flaherty, Beliveau & Pachios, LLP, were on brief for appellee Brian Germaine, Esq.

---

January 29, 2014

---

* Of the Seventh Circuit, sitting by designation.

TORRUELLA, Circuit Judge. Plaintiff-Appellant Stephen L. D'Angelo ("D'Angelo"), a licensed attorney appearing pro se, appeals an order from the District Court of New Hampshire dismissing, for failure to state a claim, his complaint against the Defendant-Appellee New Hampshire Supreme Court ("NHSC") and Defendant-Appellee Brian Germaine ("Germaine"), a court appointed Commissioner in the underlying alimony and child support litigation between D'Angelo and his former spouse.

After several years of cantankerous litigation, the New Hampshire District Court, 10th Circuit, Family Division ("Derry Family Court") found D'Angelo in contempt for failure to pay past-due child support obligations, entered judgment in his ex-wife's favor in excess of $110,000, and modified D'Angelo's child support obligations going forward. D'Angelo subsequently sought discretionary appeal from the NHSC, which was denied. D'Angelo then filed suit with the U.S. District Court for the District of New Hampshire, seeking to enjoin enforcement of the Derry Family Court's orders on constitutional grounds. The District Court denied D'Angelo relief, and dismissed his complaint for failure to state a claim. D'Angelo now appeals.

## I. Background

This matter began in Derry Family Court in 2006 and involved a lengthy battle relating to D'Angelo's support obligations to his former wife and his son. The dispute spanned

several hearings and court orders, largely related to D'Angelo's finances. The court observed throughout the process that D'Angelo had "selectively exclud[ed] relevant financial information" from the proceedings, and found D'Angelo in contempt of court "on multiple occasions."[1]

In light of D'Angelo's financial evasiveness, the court appointed attorney Brian Germaine as Commissioner in September 2011, and tasked him with investigating and reporting to the Derry Family Court D'Angelo's gross income from 2006 forward. Germaine presented his report in May of 2012. Unsurprisingly, it found that D'Angelo's income was significantly higher than what he had previously represented to the court. Thereafter, the Derry Family Court found Germaine's report to be well-supported and credible, adopted the report as to D'Angelo's income from 2006 onward, and held D'Angelo in contempt for failure to pay past-due child support obligations. Judgment was entered in favor of his ex-wife for more than $110,000, and D'Angelo's child support obligations were modified prospectively.

D'Angelo filed a Notice of Discretionary Appeal before the NHSC, but that court declined to hear his appeal. Undeterred, D'Angelo filed a complaint in the U. S. District Court on

---

[1] Specifically, D'Angelo represented his gross income as low as $29,500 and as high as $93,387, despite the court's observance that he traveled extensively, owned two Porsches and at least one Lexus automobile, purchased a $190,000 yacht and had various expenditures far exceeding the reported figures.

October 25, 2012 seeking to enjoin both orders of the Derry Family Court, and to reverse the denial of his discretionary appeal by the NHSC. D'Angelo argued that New Hampshire Supreme Court Rule 3 ("Rule 3"), which classifies appeals from child support orders as "discretionary," runs contrary to the Due Process and Equal Protection Clauses of the U.S. Constitution. He sought enjoinment of the state court orders, as well as monetary damages from the NHSC for failure to supervise the Derry Family Court. D'Angelo also asserted various claims against Germaine, alleging that Germaine failed to cooperate with D'Angelo in his investigation, that his appointment violated ethical rules by reason of an alleged conflict of interest, and lastly, that Germaine misrepresented facts to the court in his report.

The district court dismissed all of D'Angelo's claims. As to D'Angelo's challenge to Rule 3, the court found that Due Process does not contemplate a constitutional right to an appeal and thus found no violation in that respect. Likewise, the district court found that Rule 3 draws no arbitrary distinction between classes or categories of litigants and accordingly does not run afoul of the Fourteenth Amendment's Equal Protection Clause. As to Germaine, the district court concluded that he was a court appointed official charged with performing quasi-judicial duties,

and thus D'Angelo's claims were barred by the absolute provisions of the doctrine of quasi-judicial immunity.[2]

D'Angelo appeals from the district court's judgment dismissing all of his claims. Specifically, D'Angelo reiterates his Due Process and Equal Protection challenges to Rule 3, and his claim that Germaine is not entitled to immunity.[3]

## II. Discussion

### A. Constitutionality of Rule 3

D'Angelo reiterates the same constitutional challenges to Rule 3 that he made before the district court. Namely, he makes a two-pronged attack: one under the Fourteenth Amendment's Due Process Clause, the other under the Equal Protection Clause.

Rule 3 defines a "mandatory appeal" as an "appeal filed by the State . . . or an appeal from a final decision on the merits issued by a superior court, district court, probate court, or family division court." N.H. Sup. Ct. R. Rule 3 (Definitions). Rule 3 then lists nine appeals that are not mandatory, among which

---

[2] At the district level, D'Angelo also sought to enjoin enforcement of the Derry Family Court's orders. However, the district court correctly concluded it had no jurisdiction to review the state court's judgment. See Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009)("The Rooker-Feldman doctrine precludes federal jurisdiction over a challenge to a state court judgment to which the challenger was a party.")(citations omitted). D'Angelo offers no retort on appeal. Therefore, the district court's judgment on this issue is final and unimpeachable.

[3] At oral argument, D'Angelo voluntarily and explicitly waived the remainder of his theories on appeal.

is listed: "[A]ppeal[s] from a final decision on the merits issued in, or arising out of, a domestic relations matter . . . ." Id. at 3(9).

First, D'Angelo claims that the exclusion of domestic relations matters from the general rule of cases entitled to mandatory appeal before the NHSC, violates the Due Process Clause of the Constitution. The sole purpose for this purportedly arbitrary distinction is, according to D'Angelo, to reduce the number of appeals stemming from New Hampshire Family Courts. According to D'Angelo, this amounts to an unconstitutional impediment to his right of access to the courts.

Although there is undisputedly a well-established fundamental right of access to the courts, Rogan v. City of Boston, 267 F.3d 24, 28 (1st Cir. 2001)(citations omitted), it is equally well-established that the Fourteenth Amendment does not require states to afford litigants a right to appellate review, Lindsey v. Normet, 405 U.S. 56, 77 (1972)(citations omitted).

Thus, D'Angelo's argument on this front is dead on arrival, particularly since he has had ample opportunity to ventilate any and all arguments he could have creatively conjured throughout the several years of divorce and child support litigation in the Derry Family Court. That he chose an obstinate and wholly uncooperative approach before that court, which ultimately resulted in an unfavorable judgment against him, is an

outcome entirely of his own making that we cannot, and will not, disturb.

D'Angelo's second argument, that Rule 3 violates Equal Protection, is equally beyond the pale. He again contends that Rule 3 impermissibly distinguishes between persons litigating matters in family courts by deeming their appeals discretionary, as opposed to litigants of other civil matters whose appeals are mandatory. The result, according to D'Angelo, is a class of persons whose access to New Hampshire courts is hampered in violation of the Fourteenth Amendment's Equal Protection Clause.

Although Equal Protection commands that access to the courts cannot be "capriciously or arbitrarily" denied to a class of litigants, id., this constitutional right does not require courts to provide all litigants "absolute equality or precisely equal advantages," San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24 (1973). And where there are no suspect classifications or fundamental rights at play, such as in the present case, our Equal Protection review is limited to a deferential, rational basis standard. LCM Enters., Inc. v. Town of Dartmouth, 14 F.3d 675, 678-79 (1st Cir. 1994)(citations omitted). "Under rational basis scrutiny, a classification will withstand a constitutional challenge as long as it is rationally related to a legitimate state interest and is neither arbitrary, unreasonable nor irrational." Id. at 679 (citations omitted).

D'Angelo's facial challenge to Rule 3[4] fails.  First, on its face, Rule 3 does not create classes of <u>litigants</u>, but only distinguishes among <u>classes of cases</u> arising out of different types of civil proceedings.  D'Angelo's position is thus <u>identical to any other litigant</u> seeking appellate review in those <u>classes of cases</u>, namely, most domestic relations cases, in the State of New Hampshire.  Secondly, that the NHSC seeks to alleviate a heavy domestic relations appellate docket by adopting a procedural rule that allows it discretion in accepting or rejecting a certain class of cases is patently valid.  The proper, speedy, and efficient operation of the state's highest court is certainly a legitimate and valid state interest to be encouraged, not impeded.  The State of New Hampshire has allowed the NHSC to exercise its inherent power over its docket, and to craft Rule 3 in order to achieve that end.  We thus find Rule 3, on its face, to be rationally related to the achievement of a legitimate state interest.  <u>See id.</u> at 678-79.

---

[4] In his appellate brief, in the initial description of his Equal Protection argument, D'Angelo explicitly states his theory as "[w]hether New Hampshire Supreme Court Rule 3 on its face violates the Equal Protection Clause . . . ."  We thus address a facial challenge only.  Out of an abundance of caution, we note that elsewhere in his appellate brief he mentions in passing that Rule 3, as applied, is constitutionally problematic.  However, he does so only in general terms, providing us with no indication of Rule 3's faults as applied to his particular case.  Therefore, even if the argument was purportedly attempted, we need not address an as applied challenge to Rule 3.  <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

This conclusion pretty well sums up this appeal. Appellant nevertheless brings two cases to our attention which he claims counsel us to rule in his favor. D'Angelo relies on Hawes v. Club Ecuestre El Comandante, 535 F.2d 140 (1st Cir. 1976), and Aggarwal v. Ponce Sch. of Med., 745 F.2d 723 (1st Cir. 1984), in support of his constitutional contentions against Rule 3. They are, however, inapposite to his position. Both Hawes and Aggarwal involved challenges to a Local Rule of the U.S. District Court for the District of Puerto Rico ("Rule 5"). In general, Rule 5 required plaintiffs not domiciled in Puerto Rico to post security for costs, expenses, and attorney's fees at the commencement of a suit in the district court. The rule made no such requirement of residents of Puerto Rico.

The court in Hawes upheld the constitutionality of Rule 5 against the plaintiff's facial challenge and found that, on its face, the rule surpassed the rational basis test. Hawes, 535 F.2d at 145 (finding that Rule 5's distinction of residents versus nonresidents, and Rule 5 on its face, are not constitutionally invalid). Though it left the door open for an as applied challenge to Rule 5, id., Hawes is of no help to D'Angelo and his reliance on it is puzzling. In addition to the fact that Hawes left the local rule unscathed, Rule 5 was found to be a procedurally permissible requirement for access to a federal trial court. D'Angelo attempts

to have us entertain arguments based on access to state appellate review, a right non-existent under our Constitution.

Aggarwal involved a similar challenge, in that case involving an indigent plaintiff alleging the unconstitutionality of Rule 5 as applied to him. Although the plaintiff in Aggarwal fared better than Hawes, a reading of the opinion clearly establishes that the reason for his success turned on our finding that the district court abused its discretion when it set a bond that was onerous in amount without taking into account, or probing, Aggarwal's repeated allegations of destitution. Aggarwal, 745 F.2d at 728-29. We explicitly abstained from undertaking a constitutional analysis of Rule 5. Id. at 726. For the same reasons as Hawes, and because D'Angelo does not marshal an as applied challenge to Rule 3, we find Aggarwal entirely inapplicable to the case before us.

Quite simply, there are no Due Process or Equal Protection issues before us in this case. We turn now to D'Angelo's quarrel with Germaine.

B. **Germaine and quasi-judicial immunity**

D'Angelo seeks to contest the district court's finding that Germaine is immune to suit for his acts as Commissioner appointed by the Derry Family Court to investigate and produce a report on D'Angelo's financial condition. Though slightly more developed in his appellate brief, at oral argument D'Angelo

whittled down his claim to whether Germaine is indeed entitled to immunity if he "failed to do his job." Specifically, D'Angelo claims Germaine failed to follow what he purports were the Derry Family Court's orders to Germaine to meet with D'Angelo in the process of carrying out his investigation of the latter's finances.

As a threshold matter, we note that the order D'Angelo alleges Germaine violated, as quoted in his own appellate brief, was handed down by the Derry Family Court after D'Angelo's uncooperative and misleading approach to the litigation had been well documented. D'Angelo apparently attempts to have us overlook the fact that the order instructed him, and not Germaine, to pay a retainer to the Commissioner and "cooperate with him." As far as the record shows, Germaine carried out his investigation, and filed the report as he was tasked to do by the Derry Family Court. And in any event, D'Angelo's claims against Germaine, even if couched in the most imaginative light, fail to pierce the veil of immunity.

"The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012)(citations omitted). Court appointed discovery masters and the like "plainly perform judicial functions" and so long as they act in that capacity, they "share a judge's immunity from suit." Id. at 30-31 (citations omitted). In fact, even allegations of malice or bad faith do not defeat immunity.

-11-

Id. at 31-32 (citing Cok v. Consentino, 876 F.2d 1, 3 (1st Cir. 1989)).

The power of the New Hampshire courts to appoint special officers such as Germaine is well established and cannot be seriously disputed. See In re O'Neil, 159 N.H. 615, 623-24, 992 A.2d 673, 678-79 (2010). And though there are narrow exceptions to the doctrine of quasi-judicial immunity, D'Angelo mentions none in this case.

Even affording D'Angelo's argument the utmost generosity, it amounts to little more than an assertion that Germaine did not do his job properly. As the district court correctly concluded, this is unquestionably the kind of claim that quasi-judicial immunity prohibits. See Nystedt, 700 F.3d at 31 ("The fact that a court-appointed discovery master performs a judicial function in an imperfect (or even unethical) way does not, by itself, dissolve his quasi-judicial immunity."). Accordingly, the district court's dismissal of this claim stands on equal footing as D'Angelo's Due Process and Equal Protection allegations, and thus, we need go no further.

### III. Conclusion

The district court's judgment is affirmed on all grounds. Appellant is ordered to show cause within fourteen days as to why the court should not assess double costs for needlessly consuming the time of the court and opposing counsel. See In re Simply

Media, 566 F.3d 234, 236 (1st Cir. 2009); see also Fed. R. App. P. 38; 1st Cir. R. 38.0.

**Affirmed**.